## DANIEL N. VANSANT *vs.* THOMAS A. ROBERTS, Adm'r c. t. a. of CORNELIUS VANSANT.

Where a case is submitted upon an agreed statement of facts, the court is bound to decide upon the facts as presented in the record, and they can make no inferences, unless of law or such as are undeniable consequences resulting from the facts agreed upon.

A testator manumitted by will certain negro slaves, from and after the death of his wife, "provided said negroes are willing to leave the State and go to Liberia, or some other colony in Africa;" "but if the said negroes, at the decease of my wife, are not willing to leave the State as aforesaid," then they were to be hired out and their wages paid over to a certain corporation, forever. HELD, that the negroes were entitled to their freedom, though they refused to leave the State, as provided for in the will.

A misnomer in a grant by statute or by devise to a corporation, does not avoid the grant, though the right name of the corporation be not used, provided the corporation really intended to be made apparent.

A testator devised the residue of his estate to "the Trustees of the Chartered Fund of the Methodist Episcopal Church, located in Philadelphia, for the sole use and benefit of said church, according to the charter of said fund, forever." There was no corporation corresponding in name with the one mentioned in this will, but there was a corporation styled "The Chartered Fund of the Methodist Episcopal Church in the United States of America," and located in Philadelphia, which alone claimed the devise. HELD:

That the intention of the testator was manifest from the terms of the will, and the words of it show that he could only mean the particular corporation claiming, as the object of his devise.

No other corporation having claimed to be the party designated by the testator, it is a fair presumption from this fact that there are none who have any better claim to advance.

The 34th sec. of the bill of rights of this State is analogous to the British statutes of *mortmain*, and was designed to protect the people of Maryland from the same evils, and so far, therefore, as it refers to the gift or devise of *personal property*, it can have no *extra-territorial* operation.

In legal contemplation, it is not a matter of concern to this State whether property should accumulate in the hands of foreign corporations or not; these are questions to be regulated by each State for itself.

APPEAL from the Orphans Court of Cecil county.

This case originated in a petition filed in said orphans court on the 8th of February 1848, by the appellant, the brother and

sole next of kin of Cornelius Vansant, deceased, praying that the appellee might be required to deliver up to him all the property of the said testator remaining in his hands, after paying the debts and funeral expenses, &c. The case was submitted upon an agreed statement of facts, in which it was admitted, that said Cornelius Vansant died on the 21st of January 1841, leaving a last will and testament. This will, besides the provisions quoted in the opinion of this court, and about which this controversy principally arises, makes the "Trustees of the Chartered Fund of the Methodist Episcopal Church, located in Philadelphia," the residuary legatee of the testator's estate. The agreement further admits, that the negroes named in the will are a part of the estate, and have not elected to go to Liberia or any other African colony, according to the provisions of the will; that Jane Vansant, the widow of the testator, died on the — day of —, in the year eighteen hundred and —; that the State of Pennsylvania duly erected a corporation, by the name of the "Chartered Fund of the Methodist Episcopal Church in the United States of America," the charter of which is then set out in full. It is not necessary to state the provisions of this charter, as they sufficiently appear in the argument of counsel and opinion of this court. It was further admitted, that there is no corporation called "The Chartered Fund of the Methodist Episcopal Church," or "The Trustees of the Chartered Fund of the Methodist Episcopal Church," other than that named and created by said charter. That defendant can prove by oral testimony, that said corporation was the one meant by the testator when he used the description in his will, and it was agreed, that if the court should consider such testimony admissible, or that the fact of such meaning or intention appears from the face of the will, the fact of such meaning or intention shall be taken as admitted. That the yearly income of said corporation, including the devise to it in this will, does not exceed $3000 per annum. It was further agreed, "that if the court be of opinion on the aforegoing statement of facts, that the corporation named in said charter is entitled under

said will, by the laws of Maryland and its charter, to the residuary bequest, and the wages and hire of said negroes contained and named in said will, then judgment shall be entered for the defendant; but if the court shall be of opinion that said bequest is void, then judgment shall be entered for the petitioner or plaintiff, and the defendant shall account with the plaintiff for the assets of the estate, as if no bequest to said corporation had been made, subject to any rights which the court may think remain in said negroes," with the right of appeal to either party.

The court, upon this statement, passed a decree, directing the appellee to pay over the balance of the estate, after payment of debts, &c., to the said corporation. The petitioner appealed.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*Otho Scott* for the appellant, argued that the orphans court erred in its decision:

1st. It is conceded that the exact name of a corporation is not necessary to the validity of a legacy, but a deviation from the charter name must be supplied by such a description of the corporation as will identify it with certainty, as if, instead of the corporate name of the Methodist congregation which worships at the Light street meeting-house, it were described as I have described it, adding after house, "in the city of Baltimore." In such a case the face of the will would clearly show what corporation was intended.

So where a corporation has acquired a name by reputation, different from the charter name, a devise to it by either name would be valid, and all cases where a variation in the corporate name has been allowed in wills, I think may be merged in one or the other of the classes I have adverted to. *Angel and Ames on Corp.*, 77, 78, have noticed the most prominent of the cases of this sort, and cited perhaps all up to the last edition of their book, and upon inspection it will be found,

16  v.3

that the devises have only been sustained where the description clearly identified the corporation, or where a different name had been acquired by reputation. I am considering the rule as applicable to wills, and not to contracts by or with corporations; in the latter the parties know who they are dealing with and there is no difficulty about who is meant, but it is different in a will. In a contract if a natural person or a corporation uses a wrong name, neither would be permitted to set up the error in name as a defence, but a will must speak for itself. It is the work of a dead man who cannot explain his meaning, and no one can be permitted to do it for him, unless there is latent ambiguity. 1 *Greenleaf on Ev.*, sec. 290. It is admitted there is no such corporation as that named in the will, but it does not appear there are not other corporations, that would be as well described by the language of the will as the one claiming the legacy in this case.

There is no such description as makes it apparent from the face of the will, that the corporation named in the charter was intended. The bequest in the will is to "the Trustees of the Chartered Fund of the Methodist Episcopal Church, located in Philadelphia," and then is added "for the use of said church," seeming to imply that some church in Philadelphia was the object of the testator's bounty.

The corporate name in the charter is "the Chartered Fund of the Methodist Episcopal Church in the United States of America." The reference to the place where the corporation is located, is sometimes an important part of the description to aid in ascertaining the corporation meant in cases of variance from the true name. But the charter does not locate this corporation in Philadelphia, on the contrary, the fourth article of the charter authorises the corporate officers to meet anywhere and transact the business of the corporation.

Parol evidence is inadmissible except in cases of latent ambiguity. There is no latent ambiguity in this case, it is a misdescription. If the corporation had two names, one by reputation, then a case of latent ambiguity might be presented. But the misdescription of the legatee cannot be corrected by

parol, and if parol evidence is inadmissible, then we must rely on the description in the will to ascertain the legatee, and this is too uncertain to fix with a proper degree of certainty what corporation was meant.

2nd. The 34th sec. of the bill of rights, declares every devise, to or for the support, use or benefit, of any minister, preacher, &c., as such, or any religious sect, &c., without the leave of the legislature, shall be void. The charter shows clearly that this is a religious corporation, and the sixth and seventh articles show, that the funds are under the control of the ministers of the Methodist church, and for the support of a certain class of them, and is clearly within the provisions of the bill of rights, which were designed to prevent persons under religious excitement, or the influence of the persons likely to be about them in their last hours, from devoting their property to superstitious uses, and history abundantly proves, that such restrictions on giving property to what are called pious uses are highly necessary. Assuming, then, that the devise is void, without the assent of the legislature, it remains to be seen whether such assent has been given.

By the act of 1802, ch. 111, confirmed by 1809, ch. 139, every religious sect is authorised to incorporate itself; and by 1815, ch. 222, all the corporations formed under these acts are authorised to take by devise. But these acts and the privileges they confer are confined to corporations in this State, and give no privileges to foreign corporations. There is no legislative assent to the devise in this case, and it is with deference submitted that the same is void.

*E. F. Chambers* for the appellee.

There are two questions arising in this case:—1st. Is the legacy void for uncertainty in the description of the object of the devise? and 2nd. Is it void by reason of the prohibitions contained in the 34th sec. of the bill of rights of this State?

*1st Point.* There must be such language used as will describe to the satisfaction of the court, with the aid of all collateral facts, the object of the devise, but there is no necessity

that the description should be accurate. No other claimant appears, and there will never be an assumption that one exists of which no evidence appears. But suppose there is, it is a clear principle that where two objects or subjects of a devise are equally within the description, the language and the intention of the testator are to be considered. 8 *Bing.*, 239, *Miller vs. Travers*, 21 *Eng. C. L. Rep.*, 288. 3 *Curteis*, 80, *Duke of Dorset vs. Lord Hawarden*, 7 *Eng. Eccl. Rep.*, 374. Reasonable certainty alone is required. The name of the corporation in the will is, the "Chartered Fund of the Methodist Episcopal Church, located in Philadelphia"—the actual name of the corporation is, "The Chartered Fund of the Methodist Episcopal Church in the United States of America." This description is sufficiently certain to embrace the appellee as the party intended by the testator. 1 *Jarman on Wills*, 369, 370. *Angel and Ames on Corp.*, 65. 1 *Younge and Collyer*, 654, *Wilson vs. Squire.* 20 *Eng. Ch. Rep.*, 654. Wherever the name is correctly given and the other descriptions are inaccurate, or *vice versa*, the correctly described portion will be sufficient. 2 *Younge and Collyer*, 295, *Bradshaw vs. Thompson.* 21 *Eng. Ch. Rep.*, 295.

Again, the intention of the testator in this case may be explained by oral testimony. Where the ambiguity comes from parol testimony, the verification must also come from the same source. Parol testimony will always be admitted to prove the condition of the party, his relation to the subject or object of the devise, his estimate of its value, &c., and generally all such facts as will place the court in the place of the testator when he was in the act of writing his will. 8 *Bing.*, 239, *Miller vs. Travers*, 21 *Eng. C. L. Rep.*, 288. Consistent even with the most stringent doctrine in the recent English cases, parol evidence is admissible to explain this will.

*2nd Point.* The 34th sec. of the bill of rights does not prohibit this devise. This section prohibits devises to religious corporations, *as such.* Now, 1st, this section does not apply to a foreign corporation; it cannot operate *extra-territorially.* 2 *Merivale*, 161. 2nd, the corporation is not a religious sect

or order.   The donation to be prohibited must be made to a preacher, *as such*, or to a sect *or religious* order.   What is a *sect* or *denomination*, or *order*, within the meaning of this section of the bill of rights.   It must be a sect propagating a religious faith, not an *Eleemosynary* institution, created for the benefit of widows and orphans, like the one in the present case.   1 *Black. Com.*, 471.

*3rd Point.*   Again, if the corporation cannot take, the negroes are the real *cestui que trusts* under the will.   The prominent idea of the testator was the liberation and colonization of his negroes.   The statement of facts shows that they have not elected to go, but not that they have declined to go.   It does not appear when the widow of the testator died, or that the negroes ever had the opportunity to make their election. But again, the provisions of the will do not prevent the negroes from taking their freedom.   8 *Gill*, 314, *Spencer vs. Negro Dennis.*

Mason, J., delivered the opinion of this court.

Cornelius Vansant died in 1841, having first duly executed his last will and testament.   The clauses of the will which we are required to interpret, are in these words :  "I give and bequeath unto my dear wife, Jane, all my estate, both real and personal, during her natural life, and from and after her decease, do hereby release from slavery, liberate and set free my negroes" (whose names are set out at length) "and their issues forever; provided nevertheless, that the aforesaid negroes are willing to leave the State, according to the act of Assembly in such case made and provided, and to go to Liberia or some other colony in Africa."   In case the negroes elect to go, provision is made in the will for raising the money necessary to defray their expenses, by requiring the representative of the deceased wife to hire them out until the necessary sum has been raised for that purpose.   The will then proceeds: "But if the aforesaid negroes, at the decease of my wife as aforesaid, are not willing to leave the State as aforesaid, then, and in that case, they, the said negroes, are to be hired

out, as aforesaid, from year to year, and every year, and their wages or hire, clear of good and sufficient board and clothing to be paid over annually, . . . . according to law, forever, unto the *Trustees of the Chartered Fund of the Methodist Episcopal Church, located in Philadelphia,* for the sole use and benefit of said church, according to the charter of said fund forever."

Soon after the death of the testator, and before the institution of these proceedings, his widow died also.

The petitioner, who it is conceded is the next of kin and the sole heir of the testator, asks the orphans court to require the administrator of the testator to deliver up to him all the property in his hands, and thus to treat the devise contained in the will, in favor of the corporation designated therein, as void and inoperative. The grounds taken in support of this application are, first, that the legacy is void, because the corporation is a religious institution, and therefore, under the 34th sec. of our Bill of rights, is incapable of taking the devise; and secondly, because the terms employed to designate this corporation are not those used in the act of incorporation to express the corporate name of the institution.

It is conceded, that there is no corporation in existence corresponding in name with the one mentioned in the will, but that there is a corporation styled the "Chartered Fund of the Methodist Episcopal Church in the United States of America," and that it is located in Philadelphia, and that it can be proved by oral testimony, that the testator meant to make the devise to the said last named corporation.

Upon the foregoing state of facts, the following submission was entered into by the counsel 'for the parties, for the determination of the court, to wit: "If the court be of opinion, that the corporation named in the said charter and supplement thereto is entitled, under said will by the laws of Maryland, and by its charter, to the residuary bequest, and the wages and hire of said negroes, contained and named in said will, then judgment shall be entered for the defendant. But if the

court shall be of the opinion, that the said bequest is void, then judgment shall be entered for the petitioner."

In all cases submitted upon an agreed statement of facts like the present, the court are bound to decide upon the facts as presented in the record, and they can make no inferences, unless of law, or such as are undeniable consequences resulting from the facts agreed upon. *Hysinger vs. Baltzell,* 3 *G. & J.,* 159.

This then being a *case stated,* we are therefore to determine it as therein presented. We are of opinion, that the claim of the petitioner to the negroes is not sustained, and therefore the judgment must be rendered against him. In the case of *Spencer vs. Negro Dennis,* 8 *Gill,* 314, a case similar to the one before us, it was held, that the negro was entitled to his freedom. Whilst we cannot in this proceeding adjudge the freedom of the negroes in dispute, they not being parties properly before us, we can so far recognise the case of *Spencer vs. Dennis* as to defeat the claim of the petitioner. The administrator in this suit represents all the parties in interest under the will of the testator, and the rendering of a judgment in his favor in this proceeding does not preclude the negroes from hereafter filing their petition for freedom. Under the authority of the case already referred to, it is clear, that so far as the negroes are concerned the petitioner has no claim.

The remaining questions relate to the residuary devise to the corporation, and are, first, whether the description of the corporation is sufficient to entitle it to take under the will; and secondly, is the devise inconsistent with the 34th article of our Bill of Rights?

We think the law upon the first point is clearly settled. We regard the general principle as being stated with so much distinctness in 2 *Kent,* 292, as to render the examination of other authorities upon the subject unnecessary. The principle is stated to be, that a "misnomer in a grant by statute or by devise, to a corporation, does not avoid the grant, though the right name of the corporation be not used, provided the corporation really intended be made apparent." And in *An-*

*gell and Ames on Corporations, page* 79, the same doctrine is laid down. "In a devise to a corporation, if the words (though the name be entirely mistaken) show, that the testator could only mean a particular corporation, it is sufficient." And in Massachusetts it has been held, that a devise to the "Inhabitants of the *South* Parish," may be enjoyed by the "Inhabitants of the *First* Parish." 3 *Pick.*, 232.

In the present case, there is but one corporation claiming the bequest, and it is to be presumed, that as the testator manifestly designed to leave his property to some incorporated institution, all those who could have set up any claim to it would have done so. Disputes growing out of ambiguity of description like the present, generally arise between two or more corporations claiming under the same devise. Although the testator has pointed out the location of the corporation, which he intended should receive his bounty, to be in Philadelphia, yet no other but the "Chartered Fund of the Methodist Episcopal Church, in the United States of America," has claimed to be the party designated by the testator. It is a fair presumption, from this fact, that as none other has set up a better claim, there are none who have any better to advance.

But we think the intention of the testator is manifest from the terms of the will itself, and from the surrounding circumstances, and, therefore, there is no necessity for going into a consideration of the question, of the admissibility of oral proof, to explain or vary a testamentary instrument. Oral proof is not necessary for that purpose in the present case, for if there ever was an instance where "the words show that the testator could only mean a particular corporation," or where the "intention is apparent," that instance is now before us.

The 34th section of the Bill of Rights is analogous to the British *statutes of mortmain*, which were introduced to check or prevent ecclesiastics from accumulating in perpetuity, in *mortua manu*, or hands that never die, the lands or property of the kingdom, and thereby withdrawing them from public and feudal charges. This provision in our Bill of Rights,

was designed for the protection or benefit of the people of Maryland from similar evils, and therefore, so far as it refers to the gift or devise of *personal property*, it can have no extra-territorial operation. It might be very important to the people of this State, that a foreign religious corporation should not be permitted to hold large bodies of real estate within our own limits, but as personal property follows the *locus* of the owner, we cannot see why it should be a matter of concern to Maryland that the personal property of her citizens should not pass away to foreign corporations any more than to individuals living abroad. Nor is it a matter of concern to our State, in legal contemplation, whether property should accumulate in the hands of foreign corporations or not. These are questions to be regulated by each State for itself.

From what we have already said, we think we have sufficiently intimated the manner in which the estate before us should be settled. But as the petitioner has failed to make out any claim to any part of the property in controversy, judgment should have been rendered against him and in favor of the defendant, in accordance with the terms of the submission.

> *Decree reversed, and decree dismissing*
> *the petition, with costs to the defendant.*