THE PROVOST, MAGISTRATES AND TOWN COUNCIL OF
THE ROYAL BURGH OF DUMFRIES vs. ELIZABETH
S. ABERCROMBIE, and others.

*Leasehold Estate regarded as personalty, for testamentary pur-*
*poses—Legislative power to vary the terms of a trust—Case*
*of invalid bequest—Charitable uses—Practice in the Court of*
*Appeals.*

A disposition of leasehold estate must be treated as a testamentary disposition
of personal estate.

It is altogether beyond the scope of legislative power in this State to authorize
a variation or departure from the terms of a trust.

A resident of the City of Baltimore, died in the year 1873, leaving a will, by
the first clause of which he bequeathed as follows: "I do hereby order and
direct that the house and side lot where I now reside, situated  *  *  *  *
be sold by my executors hereinafter named, as soon after my death as they
may deem expedient and on such terms as they may think best; and I do
hereby devise and bequeath the proceeds therefrom arising to the Magistrates
and Town Council of the Royal Burgh of Dumfries, the County Town of
Dumfrieshire, Scotland, to be paid over to them by my executors aforesaid,
together with such rents and profits of said property as may accrue up to
the time of said sale, and which said executors shall collect: in trust  *  *
that they the said Magistrates and Town Council shall permanently invest
said rents and profits and the proceeds of said sale in government stocks or
in other safe and profitable securities, and pay over the interest and dividends
of such investments as they accrue and are received to the High School of
Dumfries which is under their direction and care, either by increasing the
salaries of teachers, or providing scholarships.  Or in such manner as may
seem best to said trustees and most likely to promote the cause of education
and elevate the standard of instruction in the said High School of Dumfries."
The testator held only a leasehold interest in said property.  Nearly a year
before his death, the care and management of said school was transferred
from the Magistrates and Town Council, and vested in the School Board for
the Burgh by Act of Parliament.  This transfer was without condition and

The Provost, &c. of Dumfries *vs.* Abercrombie, *et al.*

absolute, and said School Board, with reference to all powers and duties in regard to said school then vested in the Town Council and Magistrates, was made to *supersede and come in the place* of said Town Council and Magistrates. The said School Board was by said Act duly incorporated, and the funds and revenues of.said school were placed under its management. It was further provided by said Act, that "when in any Burgh, property or money *has been or shall be* vested in the Town Council, or in the Magistrates of any Burgh, or in any person or persons, *as trustees,* for the behoof of the Burgh School, or for the promotion of any branch of education in such school, or to increase the income of any teacher, the income or revenue of such property or money shall, as it accrues, *be accounted for and paid to the School Board,* of such Burgh, and shall be applied and administered *by the said Board* according to the trusts attaching thereto." And it was thereby further provided, that "it shall be lawful for the School Board, from time to time, with the sanction of the Board of Education, *to vary or depart from the said trusts* with a view to increase the efficiency of the Burgh Schools, by raising the standard of education therein or otherwise." HELD:

1st. That at the time the will took effect, the Magistrates and Town Council, whom the testator made trustees of this fund, and charged with the duty of dispensing the income, had no power to pay over that income as the will directed, nor to exercise the *discretion* in its disposition which the will conferred upon them, and them alone.

2nd. That the substitution of the provisions of the Act of Parliament in place of what the will directed in this respect, would.change what the testator must be assumed to have considered an essential and important part of it, and in effect make a new will for him.

3rd. That if the Act had not been passed, or had not taken effect until after his death this difficulty might not have arisen, but the question before the Court, must be determined by the state of facts and law existing when he died.

4th. That if the clause was not *then* effective the rights of the residuary legatees or next-of-kin vested immediately and irrevocably.

5th. That it.may be, that the difficulty would be overcome in England by the provisions of the statute, 43 Elizabeth, ch. 4, respecting charitable uses, or by virtue of the powers which the Courts of Chancery in that country possessed before and independently of that statute. But the case must be decided upon the doctrines of Maryland law as established by our own judicial decisions, and by these neither that statute nor any such Chancery powers have ever been adopted as part of the law of this State, but have

been uniformly denied and repudiated in every case in which an attempt has been made to have them recognized.

6th. That the difficulty above stated was insuperable and conclusive against the validity of said clause of the will.

7th. That as the decree below related to other matters which the appeal did not bring up for review, this Court must affirm that part of it only, which declared said clause of the will to be void.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ALVEY, J.

*John V. L. Findlay* and *Charles E. Phelps,* for the appellant.

This being a novel case, no authorities directly in point can be adduced. But this is by no means surprising, in view of the fact that the States of Maryland and Virginia, and possibly one or two others, wherein the doctrine of charitable uses is rejected, are the only jurisdictions in which any question could be raised upon such a bequest. Nowhere else, either in England, Scotland or America, would any difficulty be found. 2 *Perry on Trusts, sec.* 748, *note;* 2 *Redfield on Wills,* 524, 541, *notes; Vidal vs. Girard's Ex'rs,* 2 *How.,* 127 ; *Whicker vs. Hume,* 7 *House of Lords,* 155 ; *Magistrates of Dundee vs. Morris,* 3 *Macqueen,* 153, 154.

While it is conceded that the doctrine of *Dashiell vs. Attorney General,* is too well settled to be shaken, (except as abridged and impaired by the Act of 1842, ch. 86, referred to below,) the question presented by this case is simply whether that doctrine is now to be inflated by the mere breath of the Court, and enlarged beyond all principle and precedent until it is made an arbitrary instru-

ment for breaking wills, which can be readily carried into effect in accordance with the manifest general intent.

Here there can be no doubt as to the general intent. It is, that the income should be so applied to the use of the high school as best to *"promote the cause of education and elevate the standard of instruction"* therein.

*The particular* intent has reference only to the *special means.* *Simpers vs. Simpers*, 15 *Md.*, 187 ; *Inglis vs. Trustees, &c.*, 3 *Peters*, 117, 118 ; *McDonogh's Ex'rs vs. Murdock*, 15 *How.*, 367, 403, 404; *Powell on Devises*, 421 ; *Findlay vs. Riddle*, 3 *Binn.*, 162 ; *Thelusson vs. Woodford*, 4 *Ves.*, *Jr.*, 329.

In such cases, the Courts say, there is no ground to suppose that the discretion of any particular trustee has anything to do with the essence of the gift. *Perry on Trusts*, sec. 731.

It is a general principle, applicable to all municipal corporations, that as organized governmental agencies for public purposes, they are always subject to legislative control. *Hagerstown vs. Sehner*, 37 *Md.*, 180 ; *Baltimore vs. State, ex rel. Board of Police*, 15 *Md.*, 376, 462. And a testator selecting such a corporation as a trustee, is presumed to have reference to the power of the Legislature to vary the particular mode of administering the trust. *Philadelphia vs. Fox*, 64 *Pa.*, 182; 1 *Dillon Mun. Corp.*, secs. 37, 38 ; 2 *Dillon Mun. Corp.*, sec. 437.

If this bequest is declared void because the legislative power has created an agency for its enforcement not mentioned in the will, then no municipal corporation can hereafter safely be made the trustee of a public bounty, no matter how certain and definite its terms or objects. The mere *power* of the Legislature over the trustee, will be enough to set the bequest aside. The *exercise* of that power in the present instance, is only an illustration of what *may* be done in all cases. It is the *potentiality*, not the *accident*, that determines principle.

Even in the event of legislative annihilation of the corporation, the trust would not be endangered, upon the common principle, *" which admits of no exception,"* and therefore not peculiar to charitable uses, that *equity will not permit a trust to fail for want of a trustee.* Sm. Man. Eq., 190, 191 ; *Peter vs. Beverly,* 10 *Peters,* 534, 565.

Such cases have actually occurred, and no difficulty has been found in providing a trustee in place of the municipal corporation disfranchised. *Montpelier vs. East Montpelier,* 29 *Vermont,* 12, 21, 22 ; *Harrison vs. Bridgeton,* 16 *Mass.,* 16 ; *Girard vs. Philadelphia,* 7 *Wall.,* 12, 13.

[Other points omitted as not adverted to by the Court.—Reporter.]

Edward Otis Hinkley, for the appellees.

Miller, J., delivered the opinion of the Court.

The record in this case shows that Robert Daniel of the City of Baltimore, died in June, 1873, leaving a will, and the sole question for determination on this appeal is the validity or invalidity of the first clause of that will, which reads as follows :

"1st: I do hereby order and direct that the house and side lot where I now reside, situated on Hamilton Terrace, in the City of Baltimore, Nos. 239 and 241 N. Eutaw street, be sold by my executors hereinafter named, as soon after my death as they may deem expedient, and on such terms as they may think best ; and I do hereby devise and bequeath the proceeds therefrom arising to the Magistrates and Town Council of the Royal Burgh of Dumfries, the county town of Dumfrieshire, Scotland, to be paid over to them by my executors aforesaid, together with such rents and profits of said property as may accrue up to the time of said sale, and which said executors shall collect ; in trust and confidence nevertheless, to and for the uses, trusts and purposes following, that is to say, that they, the said

Magistrates and Town Council, shall permanently invest said rents and profits and the proceeds of sale in Government stocks, or in other safe and profitable securities, and pay over the interest and dividends of such investments as they accrue and are received, to the High School of Dumfries, which is under their direction and care, either by increasing the salaries of teachers or providing scholarships, or in such manner as may seem best to said trustees, and most likely to promote the cause of education and elevate the standard of instruction in the said High School of Dumfries."

The bill avers, and the answer admits, the testator held only a leasehold interest in this property, and we must therefore treat the clause in question as a testamentary disposition of personal estate. The record further shows, that nearly a year before the testator's death, the care and management of this school was transferred from the Magistrates and Town Council and vested in the School Board for the Burgh, by Act of Parliament, (35 *and* 36 *Victoria, ch.* 62,) generally known as the Scotland Education Act. This transfer is without condition and absolute. The terms of section 24 of this statute are, "Every burgh school shall be *vested in and be under the management* of the School Board of the Burgh in which the same is situated from and after the election of such School Board, and the said School Board shall thereafter, with respect to school management and the election of teachers, and generally with respect to all powers and duties in regard to such schools now vested in the Town Council and Magistrates or other authorities in whom the school management and the election of schoolmasters and teachers is at present vested, *supersede and come in the place* of such Town Council and Magistrates, or other authorities." By other sections, these School Boards are duly incorporated, and the funds and revenues of such schools whether derived from public contribution or special endowment, are also

placed under their management and control. Then by section 46, it is further provided, that "When in any burgh property or money *has been or shall be* vested in the Town Council, or in the Magistrates of any Burgh, or in any person or persons *as trustees* for the behoof of the Burgh School, or for the promotion of any branch of education in such school, or to increase the income of any teacher, the income or revenue of such property or money shall, as it accrues, *be accounted for and paid to the School Board* of such Burgh, and shall be applied and administered *by the said board* according to the trusts attaching thereto," and to this is added a provision that would be altogether beyond the scope of legislative power in this State if it interfered with vested rights, viz., "and it shall be lawful for the School Board from time to time with the sanction of the Board of Education, *to vary or depart from the said trusts*, with a view to increase the efficiency of the Burgh School by raising the standard of education therein or otherwise."

It thus appears that at the time this will took effect there was no High School answering the description which the testator has given, that is, there was no such school under the "direction and care" of the Magistrates and Town Council. But what is of more importance, the Magistrates and Town Council whom he made trustees of this fund, and charged with the duty of dispensing its income, had no power to pay over that income as the will directed, nor to exercise *the discretion* in its disposition which the will conferred upon them, and upon them alone. By this clause of his will, the testator constituted the Magistrates and Town Council for the time being of this Burgh and their successors in office, trustees of a permanent fund to be invested by them, and the income therefrom they were required to pay over to the High School which is under "their direction and care," and this payment is to be made by them to or for the benefit of that school,

"either by increasing the salaries of teachers or providing scholarships, or in such manner *as may seem best to said trustees*, and most likely to promote the cause of education and elevate the standard of instruction in the said school." What salaries shall be increased, and to what extent and of what teachers, what scholarships shall be provided, and who shall be benefited thereby, and in what other mode the cause of education shall be promoted, and the standard of instruction elevated by the disbursement of the income of this fund, are all matters which the testator confided solely to the judgment and discretion of the trustees whom he selected and appointed. But at his death, an Act of Parliament had deprived these trustees of all power over such disbursements, and had substituted in their place for the performance of this duty and the exercise of this discretion a different body corporate, composed of different individuals, elected in a different manner, and invested with more extensive powers. The vesting of this large discretion as to the distribution of his bounty, *in these trustees of his own choice*, is no immaterial or unimportant part of his will which a Court can say the testator *intended* might be changed, and may therefore be disregarded. So far from it, the substitution of the provisions of this Act of Parliament in place of what the will directs in this respect, would, in our judgment, change what we must assume the testator considered an essential and important part of it, and in effect, make a new will for him. If this Act had not been passed or had not taken effect until after his death, this difficulty might not have arisen, but the question before us must be determined upon the state of facts and law existing when he died. If this clause was not *then* effective, the rights of the residuary legatees or next-of-kin vested immediately and irrevocably. It may be that this difficulty would be overcome in England by the provisions of the Statute, 43 *Elizabeth, ch.* 4, respecting charitable uses, or by virtue of the powers which the Courts of Chan-

cery in that country possessed before and independently of that statute.   But ·must decide this case upon the doctrines of Maryland law as established by our own judicial decisions, and by these neither the statute nor any such chancery powers, have ever been adopted as part of the law of this State, but have been uniformly denied and repudiated in every case in which an attempt has been made to have them recognized.   Regarding the difficulty we have thus stated as insuperable and conclusive against the validity of the clause in question, we rest our decision upon what we have said on that subject, and shall not consider any of the other objections that have been argued at bar.

As the decree below relates to other matters which this appeal does not bring up for review, we must affirm that part of it only which declares the first clause of this will to be void.

*Affirmed, and*
*Cause remanded.*

(Decided 1st March, 1877.)

ROBINSON, J., dissented.