FLETCHER *et al. v.* SAFE DEPOSIT AND TRUST CO., Trustee *et al.*

[No. 181, October Term, 1948.]

402

*Decided June 28, 1949*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

404

*Frederick W. C. Webb* and *E. Dale Adkins, Jr.,* with whom was *Frances Fletcher Ames* on the brief, for the appellant.

*Samuel K. Dennis,* with whom was *John D. McMaster* on the brief, for the appellee, Victoria S. Tenger.

Submitted on brief by *George M. White* and *White & Page,* for the appellee, the Safe Deposit & Trust Company of Baltimore.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a decree assuming jurisdiction over the distribution of the residuary trust estate under the will of Thomas H. Brodwater, construing his will and directing distribution.

Brodwater, a native of Accomack County, Virginia, died on March 7, 1923, in Paris, leaving a will dated September 15, 1913 and a codicil dated July 26, 1917, in which he declared himself a citizen of Baltimore, "temporarily residing in a foreign country". His will was probated and his estate administered in Baltimore.

By the will he gave the residue of his estate to Safe Deposit and Trust Company, in trust, to pay out of the income $200 monthly to his only child Henry Simu Brodwater for life, and at his death to his children till the youngest should reach the age of twenty-one, when the trust should be "dissolved" and all the estate paid to the child or children then living, or the then living descendants of any deceased child or children. By the codicil this provision was superseded by provision for payment of half "the annual net revenue" from the estate to Henry for life and half to testator's (second) wife Alexandra Simu Brodwater for life; upon the death of Henry without issue "his proportion in the revenue" to be paid to Alexandra, upon his death leaving issue to "revert to his child or children as provided for in" the will, upon the death of Alexandra her proportion to be paid to Henry, if living, otherwise to "revert" to his

child or children then living or the then living decendants of any deceased child or children, "as is provided for" in the will.

Henry died in 1941 without issue. By his will he left all his estate to his widow Victoria, who has since married Robert S. Tenger. Alexandra died September 16, 1947. The trustee divided the income between Henry and Alexandra till Henry's death, and thereafter paid the entire income to Alexandra. The entire trust fund (corpus) now (on June 19, 1948) consists of $44,132.16 cash. Alexandra by antenuptial contract had waived all right over testator's estate. By Henry's death without issue the above-mentioned disposition of testator's estate by the will and codicil failed. After Alexandra's death the trustee filed a bill for assumption of jurisdiction, construction of the will and directions as to distribution. Mrs. Tenger, as sole legatee of Henry, is entitled to any reversionary interest, if a contingent disposition by the will is not valid. The question now presented is whether the contingent disposition is valid. The lower court held that it is not and that Mrs. Tenger is entitled to all testator's trust estate.

The contingent provisions in the will are verbose but can best be considered by setting them out in full. After providing for payment of the estate to the children or descendants of Henry, the will provides: "and in the event of none such, then my whole estate shall be distributed in the following manner:

"1st :—That fifteen thousand dollars out of my estate or if necessary, not to exceed twenty thousand dollars shall be paid to S. James Turlington, Dr. Oscar Richard Fletcher and Donald F. Fletcher all of Accomack County, State of Virginia, United States of America, the disposal of same shall be made first in securing a charter in perpetuity from the Legislature of the State of Virginia, United States of America, for the foundation of what shall be called and named 'The Brodwater Home of Rest', to be established in Accomack County, State of Virginia, United States of America, and to be exempt

forever from taxation and after the Charter shall have
been obtained, in purchasing near the center of Accomack
County, State of Virginia, of a site of land of not less
than twenty acres, and having built thereupon a suitable
building and furnishing same, which building shall be
called and named 'The Brodwater Home of Rest'.

"2nd :—That I appoint the said S. James Turlington,
Dr. Oscar Richard Fletcher and Donald F. Fletcher and
their successors all of Accomack County, State of Vir-
ginia, United States of America, as my 'Trustees', and
to have jurisdiction over the said mentioned 'Brodwater
Home of Rest', to decide whom [sic] shall be admitted
therein, and to whom as 'Trustees' shall be paid annually
in quarterly payments the revenue upon my remaining
estate as hereinafter provided, for the maintenance of
the said 'Brodwater Home of Rest'.

"3d :—That the said mentioned 'Brodwater Home of
Rest' when built and furnished, shall be opened for the
reception of those persons of both sexes of white blood
who are of sound mind, not inebriates, nor paupers, and
natural born citizens of Accomack County, State of Vir-
ginia, and who are able to pay annually for their upkeep
the sum of One Hundred Dollars, But should it be proven
to the satisfaction of my 'Trustees' that some persons
who may present themselves for admission are worthy
subjects, but unable to pay any compensation for their
keeping, then such persons shall be admitted free of any
charge.

"4th :—That I would recommend to my 'Trustees'
that the site selected by them for the building to be called
'The Brodwater Home of Rest', shall be built upon an
elevation sloping down to some public road, and that
the building itself shall consist of two wings, one for each
sex, with a common sitting room between, and the din-
ing room and kitchen in the rear of the building, that the
grounds surrounding the building shall be laid out to
make them attractive, and with several trees to offer
sufficient shade, and that a gardener be kept annually for
the upkeep of the same.   That a sufficient quantity of

papers and periodicals shall be subscribed for each year to be kept in the sitting room for the use of all occupants of 'The Brodwater Home of Rest'.

"5th :—That all the rest and residue of my estate, real, personal and mixed, shall be paid over to 'The Board of Supervisors', of Accomack County, State of Virginia, with the proviso and condition, that that which shall come into their possession shall be capitalized upon a 5% basis, and the revenue therefrom shall be paid perpetually and annually, in quarterly payments, to the 'Trustees' of 'The Brodwater Home of Rest', for its upkeep and maintenance, the latter to include an annual payment of one hundred dollars to each of my three 'Trustees', and their successors, for the faithful performance of their services. But should the said mentioned 'Board of Supervisors' refuse to act in such capacity, then I direct that my said mentioned 'Trustees' shall act in their stead, and receive from the 'Trustee' under my will and testament, the remainder of my estate, and they shall expend the income from my estate in the maintenance and upkeep of of the said 'Brodwater Home of Rest', and as far as shall be expedient, shall keep my estate in the form and manner as that in which they may receive it, as to the securities in which it may be at that time invested, and apply the proceeds therefrom for the maintenance and upkeep of the said mentioned 'Brodwater Home of Rest'.

"6th:—That the said 'Brodwater Home of Rest', a body corporate, shall be incorporated within twelve months after the death of my son, Henry Simu Brodwater, or his last surviving issue, and I hereby request that S. James Turlington, Dr. Oscar Richard Fletcher and Donald F. Fletcher, shall be the incorporators and directors of the said 'Brodwater Home of Rest', and in the event of the death or refusal of any one or two of them to act as such incorporators or directors, that the remaining two or one shall have power to fill such vacancy in the said number of three, and in the event that within five months after my said Son's death or that of his last surviving issue, of the failure or refusal to so

fill the said number of three incorporators, or in the event of, the death, or refusal to act within the prescribed period of five months as aforesaid mentioned of all of said three persons, then within five months after the death of my said son, Henry Simu Brodwater, or his said last surviving issue, the then Chief Judge of the Circuit Court for Accomack County, State of Virginia, United States of America, shall appoint three persons to act as incorporators and directors as aforesaid, and they shall so act. That in the event of a vacancy by death, resignation, or removal of any of the directors or incorporators of the said 'Brodwater Home of Rest', a corporation when formed as aforesaid, the vacancy or vacancies thereby occasioned shall be promptly filled by successors elected or appointed by a majority of the remaining directors.

"7th :—That my prime object in founding such a 'Home of Rest' is to provide a home for those persons who so often find themselves homeless, and that in their last days they may herein find that comfort and consolation which is often deprived them under other circumstances. But this 'Home of Rest' is not to be considered in any sense as intended to care for those persons who may be of unsound mind, inebriates, or paupers, and none such shall be admitted, or once admitted and after developing any of the above mentioned traits of character or condition, all such persons shall be dismissed.

"8th :—And I authorize and empower said 'Trustee' (The Safe Deposit and Trust Company of Baltimore City, State of Maryland, United States of America,) to make division of said trust estate at the termination of said 'Trust', and for that purpose to sell so much of said trust estate as may be necessary in its discretion."

Of the three persons named as trustees and incorporators of "The Brodwater Home of Rest", S. James Turlington died on January 30, 1926; the other two are living. No corporation has been incorporated. No "charter in perpetuity" for the home to be established in Accomack County, "and to be exempt forever from

taxation", has been secured from the Virginia legislature. On January 5, 1948 counsel for the two surviving trustees wrote to Safe Deposit and Trust Company that nothing had been done toward incorporation, because until the recent death of the widow there were no available funds for the maintenance of the home, that in their opinion the amount of the trust fund was inadequate to carry out the establishment and maintenance of the home as planned for in the will, that for $20,000 it would be impossible to purchase land and a suitable building or to purchase land and erect a building that would conform with the requirements of the will, that "ordinary business judgment tells" them it would require "many times the available amount of invested principal to maintain such a home", and if "a place might be purchased for $20,000 that would accommodate a few persons, the income on the remaining amount, at the present low investment returns and the high labor costs, barely would pay the cook". Safe Deposit and Trust Company concurs in this opinion.

On May 20, 1948 the surviving trustees obtained from the Circuit Court for Accomack County an order confirming their appointment as trustees under the will and their appointment on March 30, 1948 of Robley J. Fletcher as a third trustee and authorizing the three to make application to and receive from Safe Deposit and Trust Company payment of $15,000 of the corpus of the trust funds for the purpose of incorporation and establishment of the home. Safe Deposit and Trust Company refused to comply unless authorized and directed to do so by the court in this proceeding. The Virginia trustees say the opinion expressed in the letter of January 5, 1948 "expressed only their informal opinions as to that time", and that "even if said expressions were actually true in fact, and such inadequacy actually existed", the Maryland court "is not the proper forum for determination of the question of adequacy or inadequacy of the trust funds", and "said expressions are, therefore, irrelevant and not germane in this proceeding". On October 6,

1948 the Board of Supervisors of Accomack County declined and refused to accept the bequest to it. Accordingly, on October 13, 1948 the three trustees obtained another order authorizing them to make, and made, application for all the residuary funds of the estate. From the decree below the Virginia trustees appeal.

If the will had provided for establishment and maintenance of the home in Maryland, this provision, (apart from Art. 93, sec. 343 of the Code,) would have been void for indefiniteness. The charitable trust statute, (Acts of 1931, ch. 453, Art. 16, sec. 279,) and the cy pres statute, (Acts of 1945, ch. 727, Art. 16, sec. 279A,) are not applicable retroactively. The will became effective at testator's death, in 1923. *Salem Church of United Brethren v. Numsen,* 191 Md. 43, 52, 59 A. 2d 757, 760, 4 A. L. R. 2d 117; *Gray v. Harriet Lane Home for Invalid Children* 192 Md. 251, 272, 64 A. 2d 102, 111; *Evans v. Safe Deposit & Trust Co.,* 190 Md. 332, 344-6, 58 A. 2d 649, 655.

In argument it seems to be suggested that decisions of this court are not "applicable retroactively". Such a suggestion is groundless. Whatever philosophy or language may have gained in the expression "judge-made law", courts which by overruling their own decisions have done most to give the expression meaning usually adhere, with relentless logic, to the orthodox theory that courts "declare" the law as it has been from the beginning. "Judge-made law" has no date of enactment. Rules of construction and constitutional limitations against retroactive legislation are not applicable to judicial decisions. Real or apparent exceptions to these principles (*e.g.,* provisions in tax statutes for non-retroactive administrative rulings) are not now material. This court has never departed from these principles.

The general rule is that the validity of a will of movables, or of a trust of movables created by will, is determined by the law of the testator's domicile. *Restatement, Conflict of Laws,* §§ 295, 306. "However, where a trust is to be administered in a state other than that

of the domicile, but is by the domiciliary law invalid from the outset under a rule grounded in a feeling that the administration of such a trust would be difficult or against the policy of the domicile, if such objections do not prevail at the place of administration the courts of the domicile will hold the trust valid". *Goodrich, Conflict of Laws,* 2d Ed., § 155, citing *Vansant v. Roberts,* 3 Md. 119; *Hope v. Brewer,* 136 N. Y. 126, 32 N. E. 558, 18 L. R. A. 458, *cf., Beale, Conflict of Laws,* § 295.1.

In *Vansant v. Roberts, supra,* this court, holding the mortmain provision of the Bill of Rights inapplicable to a bequest to a foreign corporation, said: "The 34th section of the Bill of Rights [ now Art. 38 of the Declaration of Rights] is analogous to the British *Statutes of mortmain,* which were introduced to check or prevent ecclesiastics from accumulating in perpetuity, in *mortua manu,* or hands that never die, the lands or property of the kingdom, and thereby withdrawing them from public and feudal charges. This provision in our Bill of Rights, was designed for the protection or benefit of the people of Maryland from similar evils, and therefore, so far as it refers to the gift or devise of *personal property,* it can have no extra-territorial operation. It might be very important to the people of this State, that a foreign religious corporation should not be permitted to hold large bodies of real estate within our own limits, but as personal property follows the locus of the owner, we cannot see why it should be a matter of concern to Maryland that the personal property of her citizens should not pass away to foreign corporations any more than to individuals living abroad. Nor is it a matter of concern to our State, in legal contemplation, whether property should accumulate in the hands of foreign corporations or not. These are questions to be regulated by each State for itself". 3 Md. 128-129.

In *Hope v. Brewer,* 136 N. Y. 126, 32 N. E. 558, 561, 18 L. R. A. 458, the court, holding valid a charitable bequest to Scotch trustees, to be administered in Scotland, which would have been void for indefiniteness under

New York law but valid under Scotch law, said: "It is not a matter of any public concern whatever to this state whether the personal property of a person domiciled here shall pass to his heirs or next of kin in a foreign country, or to trustees in trust for charity residing there, or even to a foreign corporation for purposes of charity. *Vansant v. Roberts,* 3 Md. 119. Our law with respect to the creation of trusts, the suspension of the power of alienation of real estate, and the absolute ownership of personal property, was designed only to regulate the holding of property under our laws and in our state, and a trust intended to take effect in another state, or in a foreign country, would not seem to be within either its letter or spirit. When a citizen of this state, or a person domiciled here, makes a gift of personal estate to foreign trustees for the purpose of a foreign charity, our courts will not interpose our local laws with respect to trusts and accumulations to arrest the disposition made by the owner of his property, but will inquire as to two things: First, whether all the forms and requisites necessary to constitute a valid testamentary instrument, under our law, have been complied with; and, second, whether the foreign trustees are competent to take the gift, for the purposes expressed, and to administer the trust under the law of the country where the gift was to take effect; or, as Judge Rapallo stated the rule with respect to gifts to charity generally, the inquiry is 'whether the grantor or devisor of a fund designed for charity is competent to give, and whether the organized body is endowed by law with capacity to receive and to hold and administer the gift.' (*Holland v. Alcock, supra,* [108 N. Y. 312] p. 337.), 16 N. E. 305 [2 Am. St. Rep. 420]. In this case the testator was unquestionably competent to give, and did make the gift under all the forms and requisites necessary to constitute a valid testamentary disposition. So were the trustees to whom the gift was made, competent to take and administer it, under Scotch law, and the only question is whether we must defeat the gift and frustrate the intentions of the testator because

he neglected to observe, in all respects the rules of our local law with regard to the creation of trusts and perpetuities. Unless we are concluded upon this question by established principles of law, there is no reason growing out of the facts surrounding the case, or founded upon public policy, for diverting the property into channels not contemplated by the testator. It is no doubt true that the validity of a disposition of personal property at the domicile of the owner is generally the test of its validity in other jurisdictions. But this rule, I apprehend, only requires compliance with forms and with principles of law generally or universally recognized as essential to the transfer or transmission of property. If personal property is disposed of by will, and in trust for charity, to take effect in another country, no good reason is apparent for insisting that a full compliance with the local law of the domicile, with respect to the form or duration of the trust, or the definition of the beneficiaries, is necessary to the validity of the disposition. Such laws are not generally regarded as limitations upon the power of the owner to transfer or transmit the property, but regulations applicable to the holding of property in the particular community, founded upon political or social considerations. * * * Our conclusion is that, even if it be assumed that the bequest of the residuary estate to the Scotch trustees, in trust for the purpose of founding and maintaining the hospital, should be held void under our law for the reason that the absolute ownership of personal property is unlawfully suspended, or that the beneficiaries of the trust are not sufficiently specified or defined, still that does not render the disposition invalid, as these objections do not apply to a gift in trust to be administered in Scotland,·and perfectly valid there. This result, I think, is in·harmony with the general tendency of courts to sustain testamentary dispositions of property when it fairly can be done under the rules of law, and in accordance with principles of enlightened justice."

The court also quoted *Chamberlain v. Chamberlain*, 43 N. Y. 424 and *Manice v. Manice*, 43 N. Y. 303, including in each case citation of *Vansant v. Roberts, supra*. In a note in *19 Harvard Law Review* 457, it was said, citing *Hope v. Brewer, supra*, and *Vansant v. Roberts, supra*, "Where, however, the trust is too remote by the *lex domicilii* of the testator, it is said that it is not against the policy of that law to allow the creation of a perpetuity abroad and that therefore the trust is valid if not opposed to the law of the state of administration; and the same may be said as to a trust contrary to the mortmain statutes of the testator's domicile. This result seems based on the assumption that the *lex domicilii* of the testator allows the validity of such a trust to be determined by the foreign law." *Hope v. Brewer, supra*, was cited by this court in *Re Stickney's Will*, 85 Md. 79, 107, 36 A. 654, 35 L. R. A. 693, 60 Am. St. Rep. 308, and in *Waters v. Order of the Holy Cross*, 155 Md. 146, 155, 142 A. 297.

*Hope v. Brewer, supra*, we think, is not at variance with *Dumfries v. Abercrombie*, 46 Md. 172, in which a bequest to the Magistrates and Town Council of Dumfries in trust for the High School of Dumfries "which is under their direction and care", was held invalid because about a year before the testator's death the care and management of the school was by an Act of Parliament transferred from the Magistrates to an incorporated School Board. This court held that the substitution of the provisions of the Act of Parliament for what the testator directed would in effect make a new will for him. The court also said, "If this Act had not been passed or had not taken effect until after his death, this difficulty might not have arisen, but the question before us must be determined upon the state of facts and law existing when he died. If this clause was not *then* effective, the rights of the residuary legatees or next-of-kin vested immediately and irrevocably. It may be that this difficulty would be overcome in England by the provisions of the Statute, 43 Eliz. ch. 4, respecting

charitable uses, or by virtue of the powers which the courts of chancery in that country possessed before and independently of that statute. But we must decide this case upon the doctrines of Maryland law as established by our own judicial decisions, and by these neither the statute nor any such chancery powers, have ever been adopted as part of the law of this State, but have been uniformly denied and repudiated in every case in which an attempt has been made to have them recognized". 46 Md. 179-180. This mention of the statute of 43 Elizabeth was not a ground of decision. That statute had become obsolete in England and was repealed in 1888 (*Scott, Trusts,* § 348.2) and apparently never had been extended to Scotland. *Dumfries v. Abercrombie* did not decide that a bequest for a charitable trust, which would be void for indefiniteness in Maryland but is to be administered in a state or foreign country where it would be valid and enforceable, is invalid.

The rule—or absence of rule—of conflict of laws in such a case may be more broadly—or loosely—generalized. "Courts tend, unhampered by any fixed conflict-of-laws rule, to sustain charitable trusts which do not violate the policy of any state concerned". *Beach v. Gilbert,* 77 U. S. App. D. C. 117, 133 F. 2d 50, 51, citing *Beale, Conflict of Laws,* § 295.1. In the case just quoted three bequests by a District of Columbia testator for charitable trusts in Maryland and Virginia were held valid. The testator died in 1929 and a life estate antecedent to the trusts terminated in 1937. In the District, and in Virginia under an act of 1914, the trusts would be enforceable. In Maryland (the court said) the law since 1931 would have "required", and before 1931 would have "permitted", the trustees to use the income "as the testator directed". The opinion cites cases in which bequests were held valid (a) when enforceable under the law of the domicile, but not under the law of the state where the trusts are to be administered (*cf. In re Stickney's Will, supra; Waters v. Order of the Holy Cross, supra*), and (b) when enforceable under the law

of the place of administration, but not under the law of the domicile. *Cf. Vansant v. Roberts, supra; Hope v. Brewer, supra.*

It is contended that *Church Extension of M. E. Church v. Smith,* 56 Md. 362, holds that a bequest for a trust, which would be void for indefiniteness under Maryland law, but is to be administered in a state where it would be valid and enforceable, is invalid. No such point was presented or decided in that case. The court did hold, following *Vansant v. Roberts, supra,* that the Maryland mortmain provision is not applicable to a bequest to a foreign corporation. From the opinion it does not appear that the charitable trust held invalid was to be administered exclusively in Pennsylvania, or indeed outside Maryland, or that the Pennsylvania law of charitable trusts, or any other law of any state, had been offered in evidence.

It is also contended that the bequest in question is made invalid by section 2 of subchapter 1 of the Acts of 1798, ch. 101, Art. 93, sec. 333, which provides, "No will, testament or codicil shall be effectual to create any interest or perpetuity, or make any limitation, or appoint any uses not now permitted by the constitution or laws of this State." This statutory declaration, if it is more than a truism (that any unlawful interest or perpetuity is unlawful), like the mortmain provision, is not operative extraterritorially.

We find no reason, in principle, in statutes or in decisions of this court, why we should not follow *Vansant v. Roberts, supra,* to the extent that it has been followed in New York for more than fifty years, or why we should not follow, on the precise question now presented, *Hope v. Brewer, supra,* which has been cited by this court in cases in which it was less directly in point. If, therefore, the trust now in question is valid and enforceable under the laws of Virginia, we think the bequest is valid.

The legal history of charitable trusts in Virginia is much the same as in Maryland. In both states it began with the historical error in *Baptist Association v. Hart's*

*Executors,* 4 Wheat 1, 4 L. Ed. 499, in holding that charitable trusts originated under the statute of 43 Elizabeth, c. 4, and therefore were outlawed by repeal of that statute in Virginia—and by failure to adopt it in Maryland. After the Supreme Court in the Girard will case, *Vidal v. Girard's Executors,* 2 How. 127, 11 L. Ed. 205, had corrected this historical error, and after abortive steps to correct it in Virginia, the Virginia and Maryland courts both adhered to the original error. By a Virginia act of April 2, 1839 and subsequent acts bequests "for literary purposes", or for the education of persons within the state, were made "as valid as if made to or for the benefit of a certain natural person". In 1914 these provisions were amended so as to cover gifts and bequests "for charitable purposes", whether made to a body corporate or unincorporated, or to a natural person. Acts of 1914, ch. 234; Code of 1887, § 1420; Code of 1919, § 587. This charitable trusts act of 1914 was followed by a cy pres act of 1946, Acts of 1946, ch. 187, adding § 587a to the Code, as in Maryland the charitable trusts act of 1931, *supra,* was followed by *cy pres act of* 1945, *supra.* "Whether [apart from the *cy pres act* of 1946] the [judicial] *cy pres* doctrine in its broader aspects will be applied in a proper case we need not here decide". *Thomas v. Bryant,* 185 Va. 845, 855, 40 S. E 2d 487, 491, 169 A. L. R. 257, citing *A Survey of Charitable Trusts in Virginia,* 25 Virginia Law Review 109, 115.

It is contended that, even if Virginia law is applicable in the instant case, the trust has failed because of failure to incorporate within twelve months, and to fill the vacancy among the trustees within five months, after Henry's death. The Virginia trustees contend that the codicil so modified the will that by implication these periods run from the death of the last life tenant. This question of construction we need not decide. Whether the periods run from Henry's death or from Alexandra's, they have expired. On the other hand, the will contains no limitation over, or other provision for forfeiture, in the event of delay in incorporating or filling vacancies. Provision

for forfeiture will not be implied. *Cf. In re Stickney's Will, supra.* Mrs. Tenger has not been prejudiced, or acquired rights, by delay in establishing the trust. Charitable trusts, like private trusts, do not fail for want of trustees. *Fitzgerald v. Doggett's Executor,* 155 Va. 112, 155 S. E. 129; *Scott, Trusts,* § 397. If excuse for delay were needed, total lack of money, unless the decree below is reversed, would suffice.

This is a trust "for charitable purposes". In the long, but not exclusive, enumeration of charitable purposes in the statute of 43 Elizabeth the first one mentioned is "relief of *aged,* impotent and poor people". (Italics supplied.) *Scott, Trusts,* § 368.1; *Second National Bank v. Bank,* 171 Md. 547, 556-557, 190 A. 215, 111 A. L. R. 711. Though the terms of the trust are verbosely stated, the general charitable intent is not subordinated to details. The will provides for "securing a charter in perpetuity from the Legislature" for a home "to be exempt forever from taxation", but does not make a legislative charter or tax exemption a condition of the bequest. This is also true of the now impossible provision that the ultimate residue "shall be capitalized [invested] upon a 5% basis." Persons "who are able to pay annually for their upkeep" $100 are to be admitted in the home, but the trustees are to decide who shall be admitted and may admit "free of charge" "worthy subjects" who are "unable to pay" for their "keeping". If the Board of Supervisors of Accomack County refuse to act, the trustees "shall act in their stead". Though there is no direct evidence in the record, perhaps we must take judicial notice that the sum of $44,000 gross (less expenses) is insufficient to establish and maintain a home on the scale contemplated by testator or indeed any home at all. In *Thomas v. Bryant, supra,* it was held, on the basis of economical estimates of costs, that a sum of $93,000, to be invested in government bonds, was not insufficient to establish and maintain a home. In the instant case the will does not indicate that testator would have preferred no charity at all to a smaller one, no home at all

to part of one. *Cf. Gray v. Harriet Lane Home for Invalid Children, supra.* His "prime object", stated in paragraph 7th, *supra,* "to provide a home for those persons who so often find themselves homeless, and that in their last days they may herein find that comfort and consolation which is often deprived them under other circumstances", is not appreciably different from the object of other homes for the aged in Virginia and elsewhere. This "prime object" might well be approximated by applying this fund to some existing home in or near Accomack County. His wishes would not be carried out at all by turning the fund over to Henry's legatee.

In *Massanetta Springs v. Keezell, Administrator,* 161 Va. 532, 171 S. E. 511, 512, a bequest "To the Trustees of the proposed Industrial School near Massanetta Springs or to the Church or other agency which shall establish and control such Industrial School" was held invalid. No such school was in existence or definitely in prospect. The court said, "there is nothing in the will here to indicate that the bequest was for charitable or educational purposes. Here there is a total absence of any certainty of purpose or of any direction to the trustees or church or other agency which is supposed to control the fund, or the use or application of the fund". 161 Va. 541, 171 S. E. 514. It was also said, "Indefinite charitable trusts are void even in England, both at law and in equity, and are carried into execution by the king as *parens patriae* under his sign manual only. The courts in this country, while they have succeeded to the powers and jurisdiction of the English chancery court, have not succeeded to the prerogative of the crown, * * *. That such indefiniteness of purpose is a fatal defect in America cannot be doubted, as the prerogative *cy pres* doctrine has no application on this side of the Atlantic". 161 Va. 542, 171 S. E. 514. *Cf. Fontain v. Ravenel,* 17 How. 369, 15 L. Ed. 80; but see *Minot v. Baker,* 147 Mass. 348, 17 N. E. 839, 9 Am. St. Rep. 713, per Holmes, J.; *Bogert, Trusts and Trustees,* § 434. In the instant case there is no indefiniteness of purpose and no occasion to resort to the preroga-

420

tive *cy pres* doctrine. The judicial *cy pres* doctrine, which is generally applicable in America to charitable trusts, *Scott, Trusts,* 399.1; *Bogert, Trusts and Trustees,* § 433, is ample warrant for application of the trust estate to maintenance or extension of some existing home in furtherance of testator's "prime object". Perhaps without resort to any *cy pres* doctrine, the same result might be reached by a "liberal construction" of the will. *Bogert, Trusts and Trustees,* § 433. *Cf. Gray v. Harriet Lane Home for Invalid Children, supra.*

In *Moore v. Downham,* 166 Va. 77, 82, 184 S. E. 199, it was held that a bequest to a named trustee "for him to dispose of for charitable purposes" is a valid charitable trust under § 587, at least as supplemented by an act of 1934, Code, Supp. 1934, § 6298a, providing for appointment of substituted trustees in case of discretionary trusts. In *Thomas v. Bryant, supra,* the court said, "As is said in the recent case of *Village of Hinsdale v. Chicago City Missionary Society,* 375 Ill. 220, 30 N. E. 2d 657, 663: 'Charitable gifts are viewed with peculiar favor by the courts, and every presumption consistent with the language contained in the instruments of gift will be employed in order to sustain them.' All doubts will be resolved in their favor. In the case before us the testator desired that this fund be used for a worthy charitable purpose. It is clear that he did not intend that his heirs should receive it. While the income from the fund may not be sufficient to maintain and establish a home on the scale of some other institutions of like character, there is no reason why it should not be applied as far as is practicable to carry out the testator's intent". 185 Va. 852-853, 40 S. E. 2d 490, 169 A. L. R. 257.

Compelled as we are to decide a question of Virginia statutory law on which the Supreme Court of Appeals of Virginia has not yet directly spoken, our conclusion is that under the charitable trusts act of 1914, independent of the act of 1934 or the *cy pres* act of 1946, the trust created by the bequest in the instant case would be valid and enforceable, by application of the judicial *cy pres*

doctrine or perhaps by construction of the will.

As the trust estate must now be paid over to the Virginia trustees, and not to Mrs. Tenger, it is unnecessary to consider the Virginia trustees' appeal from the lower court's refusal to allow them a counsel fee out of the money awarded to Mrs. Tenger. Reversal of the decree below will be without prejudice to any future application of the trustees in the lower court or in Virginia, for allowance of counsel fees for services heretofore or hereafter rendered.

*Decree reversed and cause remanded for further proceedings in accordance with this opinion, costs above and below to be paid out of the estate.*