# DE WITT a. CHANDLER.

*Supreme Court, First District; General Term, November,* 1860.

LEGACY.—VOLUNTARY ASSOCIATION.—ACTION IN THE NAME OF PRESIDENT.—DISMISSAL OF COMPLAINT.

In, and previous to, May, 1849, there existed in New York three unincorporated associations of similar objects, viz. : The American Protestant Society, whose object was to diffuse through the United States the principles of the Protestant religion ; The Foreign Evangelical Society, whose object was to promote the moral and' religious welfare of the inhabitants of foreign Christian countries ; and The Christian Alliance, whose object was to unite Christians of all denominations in promoting religious freedom and knowledge in papal countries. These associations were simultaneously dissolved, and the members of them associated themselves as the American and Foreign Christian Union, whose object was declared to be to diffuse religious liberty and pure Christianity, both at home and abroad, where a corrupt Christianity exists. The defendants' testator who died shortly before the union of these societies, bequeathed a legacy to be paid in six years from his decease, to the person who at such time should act as treasurer of the American Protestant Society, the first above named.

*Held,* 1. That the new society sufficiently represented the other to be entitled to the legacy.

2. That an action to recover it must be brought in the name of the treasurer of the new society, he being the real party in interest.

The president of such an association may, under the acts of 1849 and 1851, maintain actions on behalf of the association ; and if the legacy had been to the association instead of the treasurer, the president might recover thereon.

The objection that such an action was brought in the name of the president instead of by the treasurer, need not be taken by demurrer or answer, but may be taken on the trial on the ground that the facts do not constitute a cause of action.

Although the complaint in such an action, among other relief, demands the appointment of a trustee to receive the legacy if such appointment should be adjudged necessary, the court will not deem that a proper subject to be passed on in a suit framed for the main purpose of obtaining payment of the legacy to the existing treasurer.

In such case the order dismissing the complaint should be without prejudice to a new action.

Appeal from an order dismissing the complaint.

On the 30th day of November, 1847, Peter Chandler made

and executed his last will and testament, and among numerous bequests made the following:

"I give and bequeath to my executors the sum of three thousand dollars, in trust, to pay over the same in six years from my decease, to the person who, when the same is payable, shall act as the treasurer of the American Protestant Society, reorganized in the city of New York, under its present name in the year 1844, to be applied to the charitable uses and purposes of said society, and under its directions."

The testator died on the 1st day of January, 1848. The American Protestant Society, from the date of said will, until May 10, 1849, was a voluntary and unincorporated association of persons in the city of New York, organized under a constitution which, among other things, declared the object and purpose of said association, as follows:

### Article 2d.

"The object of this society is to diffuse throughout the United States the principles of the Protestant religion, for the purpose of enlightening the minds both of Protestants and of Romanists respecting the doctrines and duties revealed in the word of God, and to diffuse correct information concerning the distinctions between Protestantism and Romanism."

On the 10th day of May, 1849, said association ceased to exist, and ceased to have any organization whatever, or any officers.

There also existed in the city of New York on the 10th day of May, 1849, a certain other voluntary and unincorporated association, called "The Foreign Evangelical Society of the United States," having a constitution which declared the object of such association as follows:

### Article 2d.

"The object of this institution shall be, by means of preaching, schools, useful books, and other lawful instrumentalities, to promote the moral and religious welfare of our fellow-men in foreign Christian countries which stand in need of our aid."

This society also ceased to exist, or to have any officers or organization on said 10th day of May, 1849.

Another voluntary and unincorporated association also existed on said 10th day of May, 1849, in the city of New York, called by the name of "The Christian Alliance."

The object of the last association "was to unite Christians of all denominations, in promoting religious freedom, and to diffuse useful religious knowledge, especially the word of God, among the nations of Italy and other papal countries."

On the 10th day of May, 1849, a new association, voluntary and unincorporated, was formed in the city of New York by the associates of the aforesaid three associations, and consisted of seven or more associates, and adopted a name, "The American and Foreign Christian Union," and a constitution, which, among other matters, declares the object of such new association as follows:

### ARTICLE 2d.

"The object of the society shall be by missions, colportage, the press, and other appropriate agencies, to diffuse and promote the principles of religious liberty, and a pure and evangelical Christianity, both at home and abroad, wherever a corrupt Christianity exists."

The plaintiff in this action, as the president of the latter association, brought this action, under the Law of 1849, as amended in 1851 (see *Laws of* 1849, ch. 258; *Ib.* 1851, ch. 455),—authorizing suits by associations to be maintained in the name of officers,—against the defendants as the executors of said testator, to enforce the payment of the legacy which the executors, on demand, had refused to pay. The cause was referred to H. W. Robinson, Esq., as referee, who dismissed the complaint with costs after a hearing of the parties.

The referee who tried the cause found the foregoing facts substantially, and the following conclusions of law:

1. That no law authorizes an action in the name of the president of an association, unincorporated and voluntary, except when such action might be maintained in the name of the associates.

2. That the American and Foreign Christian Union has no

right to maintain the action, either in its own name, or the name of the president.

3. The bequest in question was not a legacy to the American Protestant Society, but was made for the charitable uses and purposes of said society.

4. The American Protestant Society, being a voluntary and unincorporated society at the death of the testator, was legally incompetent to take or hold property as trustee.

5. That the trust contained in the bequest in question, is not the subject of a voluntary transfer. And the American Protestant Society had no power over or interest in its execution, which it could assign or transmit to "The American and Foreign Christian Union," or its president.

6. That the American and Foreign Christian Union had not, nor has its president, any other or further interest in the enforcement of the bequest than any citizen at large, and such general interest does not furnish any ground of action.

7. The objection is apparent in the face of the complaint, that a cause of action is not stated, and, therefore, it was not necessary to demur.

The plaintiff duly excepted to the report of the referee, and to his conclusions of law, and the report was filed and judgment entered thereon in favor of the defendants, dismissing the complaint, and for $112.90, the costs of the action, on the 17th day of June, 1858. The plaintiff duly appealed therefrom to the general term.

*J. W. Edmonds*, for the appellant.—I. This action is properly brought in the name of the president of the society. The Act (ch. 258, 389) of 1849 authorizes any joint-stock company or association thus to prosecute. The Act (ch. 455, 838) of 1851 extends the provisions of that act to " any company or association composed of not less than seven persons, who are owners of, or have any interest in, any property, right of action, or demand," &c. (Austin *a.* Searing, 16 *N. Y.*, 116; Tibbetts *a.* Blood, 21 *Barb.*, 650.)

II. The referee erred in ruling that the bequest can be sustained against the trustee only by the attorney-general. 1. That is on the principle that plaintiffs are not *cestuis que trust*. That

De Witt *a.* Chandler.

is begging the whole question involved in the action, and deciding the merits on a question of parties; and that is never done, when a valid decree on the subject-matter can be made between the parties in court, in the pending action. (*Story's Eq. Pl.*, § 228.) 2. The case cited, Female Association *a.* Beekman (21 *Barb.*, 565), does not establish this principle. It merely decides that, in a case of a charity, where there is no one who has more than a mere possibility, the attorney-general may enforce it. 3. Besides, even if it were so, that is no reason why the complaint should have been dismissed. The cause might stand over to bring in the attorney-general, the objection being made only at the hearing. (*Story's Eq. Pl.*, §§ 236, 541.) If dismissed, it ought to have been without prejudice to a new suit. 4. But these plaintiffs had more than a mere possibility. If they have not the beneficial interest, no one has; and it is only where all the parties interested are parties to the abuse, that the proceeding must be by the attorney-general. (Bromley *a.* Smith, 1 *Sim.*, 8.) 5. It is too late to make an objection as to parties. It ought to have been made by demurrer, and not being so made, it is waived. (*Code*, §§ 144, 147; Zabriskie *a.* Smith, 3 *Kern.*, 336.)

III. These plaintiffs succeed to all the rights of the legatees, and can enforce the bequest. 1. The society, as to all the purposes of this action, is the same; it has the same members, the same objects, and the same property and organization; it has merely changed its name, and added to its members. (Hendrickson *a.* Decow, *Saxt.*, 577.) 2. The bequest was to the executors to pay over to the treasurer of the society, with directions how it shall be expended, to wit, "for the charitable uses of the society and under its direction." 3. This constituted the society the *cestuis que trust*, and the executors the trustees. (McGirr *a.* Aaron, 1 *Penn.*, 49; Browers *a.* Fromm, *Addis.*, 362; Hadley *a.* Hopkins Academy, 14 *Pick.*, 240; Hadden *a.* Chorn, 8 *B. Mon.*, 70.) 4. The mere transfer of the power over the administration of the trust from one person to another, does not alter the case. (The Sailor's Snug Harbor Case, 3 *Peters*, 99; *Laws of* 1848, 288, ch. 177; Hadley *a.* Hopkins Academy, 14 *Pick.*, 240; State *a.* Cutler, 4 *Shep.*, 349; Sewall *a.* Cargill, 3 *Ib.*, 414; Pownell *a.* Myers, 16 *Verm.*, 408; Miller *a.* Gable, 2 *Den.*, 492; Hornbeck *a.* American Bible Society,

2 *Sandf. Ch.*, 133 ; Potter *a.* Chapin, 6 *Paige*, 639 ; Cincinnati *a.* White, 6 *Peters*, 431.) 5. This is a definite charity, and is a trust which equity will execute, and not suffer to fail by any change in the instrumentalities. (Wade *a.* Am. Colon. Society, 7 *S. & M.*, 663 ; Potter *a.* Chapin, 6 *Paige*, 639.)

IV. It is the duty of this court, as a court of equity, to enforce this bequest. 1. The purpose of the bequest is a recognized legal charity. (Christ's College, 1 *W. Black.*, 90 ; Moggridge *a.* Thackwell, 7 *Ves.*, 36.) 2. As such, it is to be received favorably and enforced, unless clearly against law. 3. In such cases, the general jurisdiction of this court embraces it as part of the general power of the court, and irrespective of 43 Eliz. (Beatty *a.* Kurtz, 2 *Peters*, 584 ; McCarty *a.* Orphan Asylum, 9 *Cow.*, 481.) 4. It has such jurisdiction, and will exercise it independent of 43 Eliz., even where the beneficiaries are too vaguely designated to be able to claim for themselves. (Wright *a.* Trustees, &c., 1 *Hoff.*, 202 ; Dutch Church *a.* Mott, 7 *Paige*, 77 ; King *a.* Woodhull, 3 *Edw.*, 79 ; Burr *a.* Smith, 7 *Verm.*, 241 ; Attorney-General *a.* Jolly, 1 *Rich. (S. C.)*, 99 ; Kniskern *a.* Lutheran Church, 1 *Sandf. Ch.*, 439.) 5. This charity is sufficiently definite and certain to be enforced. (Going *a.* Emory, 16 *Pick.*, 107 ; Bartlett *a.* King, 12 *Mass.*, 537 ; Burr *a.* Smith, 7 *Verm.*, 241 ; Stone *a.* Griffin, 3 *Ib.*, 400 ; Charles *a.* Hunnicut, 5 *Call*, 311 ; Coggeshall *a.* Pelton, 7 *Johns. Ch.*, 292 ; Shotwell *a.* Mott, 2 *Sandf. Ch.*, 46 ; White *a.* Attorney-General, 4 *Ired Eq.*, 19 ; Attorney-General *a.* Wallace, 7 *B. Mon.*, 611 ; Pickering *a.* Shotwell, 10 *Barr.*, 23 ; Winslow *a.* Cummings, 3 *Cush.*, 358 ; Sweeney *a.* Simpson, 5 *Ind.*, 465.) 6. And especially is this so, where, as in this case, there is given a discretionary power to make it certain. (Faversham *a.* Ryder, 27 *Eng. L. & Eq.*, 367 ; Whicker *a.* Hume, 10 *Ib.*, 217 ; Bull *a.* Bull, 8 *Conn.*, 48.) 7. It is no objection that the society is unincorporated, for even if a direct bequest to it, it would be valid. (Banks *a.* Phelan, 4 *Barb.*, 80 ; Wright *a.* Trustees, &c., 1 *Hoff.*, 202 ; King *a.* Woodhull, 3 *Edw.*, 79 ; Bartlett *a.* Nye, 4 *Metc.*, 378.) 8. Even if failing in part, the bequest will be executed as far as possible. The doctrine of *cy pres* obtains in this State. (Coster *a.* Lorillard, 14 *Wend.*, 308 ; Gilman *a.* Hamilton, 16 *Ill.*, 225 ; 1 *Rev. Stat.*, 748, § 2 ; 723, § 17 ; 226, § 38.) And will be enforced, however uncertain the object or

person, whether the purpose can be executed or not, whether the devisees are in *esse* or not, and whether the legatee be a corporation or not. Where a literal execution becomes impracticable, the court will execute it *cy pres*. (4 *Kent's Com.*, 508, n.) The bequest will not be allowed to fail, because the object cannot be found. (Loscrombs *a.* Wintingham, 7 *Eng. L. & Eq.*, 164 ; Clark *a.* Taylor, 21 *Ib.*, 308 ; Richmond County *a.* Taylor, *Gilmer*, 336.) In such case, it will be executed to a kindred purpose. (Winslow *a.* Cummings, 3 *Cush.*, 358 ; Wheeler *a.* Smith, 9 *How. U. S.*, 55 ; Wright *a.* Trustees, 1 *Hoff.*, 202.)

V. This bequest vested in the lifetime of the American Protestant Society, and passed to these plaintiffs by valid assignment. The testator died 1st January, 1848. The union of the societies did not occur until May, 1849, sixteen months after. Thus the bequest vested. (Conklin *a.* Moore, 2 *Bradf.*, 179 ; Patterson *a.* Ellis, 11 *Wend.*, 260.) And under the Code, these plaintiffs, being the parties in interest, must sue. (*Code*, § 111.)

VI. This bequest ought to be enforced, on the broad ground that it is " an established principle of American law, that the Court of Chancery will sustain and protect a gift, bequest, or dedication of property to public or charitable uses, provided the same is consistent with local laws and public policy, where the object of the gift or dedication is specific and capable of being carried into effect according to the intention of the donor." (Potter *a.* Chapin, 6 *Paige*, 650, per Walworth, Ch., citing 2 *Kent's Com.*, 286; *Ib.*, 508 ; 2 *Peters*, 566 ; 3 *Ib.*, 99 ; 7 *Verm.*, 241.)

*H. Sheldon*, for the respondents.—I. The legacy was contingent, and has lapsed and fallen into the residuary estate. 1st. Because neither the legacy nor the interest thereon was to be paid until six years after the decease of the testator, with interest after one year from his decease, and then only to " the person who, when the same should be payable, should act as Treasurer of The American Protestant Society, reorganized under its present name in the year 1844. The testator, by the peculiar wording of the bequest, evidently intended that the payment should depend and be conditioned upon the fact of the

De Witt *a.* Chandler.

devisee remaining in a certain *status.* (Patterson *a.* Ellis, 11 *Wend.,* 259–267.) All the other bequests contained in the will are in the usual form: this alone is an exception,—clearly showing by this the testator's intention, and the principle is familiar that the testator's intention must govern. (*Ib.,* 265–267.) 2d. Because, when the legacy and the interest became due and payable, there was no legatee in existence competent or authorized to receive the same. 3d. Because, on the merger of the three societies, the objects of the consolidated society were entirely dissimilar to those held by The American Protestant Society.

II. The rule as laid down in Jarman on Wills (vol. i., 639), and which, without doubt, is correct, is, that if the payment be postponed with reference to the circumstances of the devisee of the money, the charge fails, unless the devisee is alive to take at the time of payment, and this too though interest in the mean time be given for maintenance. It is undoubtedly true, as claimed by the counsel for the plaintiff in the court below, that where the payment is postponed simply with reference to the time of payment, then the legacy vests on the death of the devisor. (Patterson *a.* Ellis, 11 *Wend.,* 260.) In the present case, however, the testator made the legacy and the vesting thereof contingent upon the existence of a treasurer of a society known by a certain name; and that he intended that, is amply shown by the peculiar wording of the legacy in question.

III. The leading distinction is, that if futurity is annexed to the substance of the gift, the vesting is suspended, but if it appears to relate to the time of payment only, the legacy vests instanter. (1 *Jarman on Wills*; *Perkins' Notes,* 641, § 6; *Williard's Eq. Jur.,* 516; 11 *Wend.* 259–268; Snell *a.* Dee, 2 *Salk.,* 415.) Futurity is annexed to the substance of the gift in this case in two particulars. 1st. There must be, at the time the legacy is payable, a society by the name of The American Protestant Society; and 2d. A treasurer of a society by that name.

IV. Again, if payment is deferred not merely until the lapse of a definite time which will certainly arrive, but until an event which may or may not happen, the effect, it would seem, is to render the legacy itself contingent. (1 *Jarman on Wills;* *Perkins' Notes,* 643.) And if the contingency happen not, the legacy must of necessity lapse. In this case, the time of

payment is certain, and connected therewith is a certain contingency or condition, which may or may not happen,—that of the existence of an acting treasurer of a society known by a certain name.

V. A gift by will to a particular charitable institution, maintained voluntarily by private means, the particular intention having ceased, held that the gift was not to be disposed of as a charitable gift *cy pres*, but failed and fell into the residue. (Clark *a.* Taylor, 21 *Eng. Law & Eq.*, 308; same case cited by Justice McLean in Fontain *a.* Ravenal, 3 *Am. Law Reg.*, 275, 276; 4 *Kern.*, 380; Williams *a.* Williams, 4 *Seld.*, 525, 548, 550; Beekman *a.* People, 27 *Barb.*, 291.) In this case the intention of the testator ceased upon the consolidation of three associations.

VI. A devise to an unincorporated association is, in general, void at law as well as in equity. (Chittenden *a.* Chittenden, 1 *Am. Law Rep.*, 539; 4 *Wheat.*, 1; 3 *Peters, Ap.*, 481; Owens *a.* Missionary Society of the Methodist Episcopal Church, 4 *Kern.*, 385, and cases there cited.) The present bequest, if sustainable at all, can only be upheld upon the ground that it is for a charitable use. And it is only by virtue of that peculiar jurisdiction exercised by courts of equity, in regard to charitable uses, that such bequests have ever been sustained. (*Ib.*)

VII. The present bequest is not a charity or for a charitable use within the spirit of the case last above cited, and the bequest becomes part of the residuary estate. (4 *Kern.*, 409, DENIO, C. J.) " Charity, in its widest sense, denotes all the good affections which men ought to bear towards each other; in its most restricted, which is the popular sense, it signifies relief to the poor. (*Bouvier's Inst.*, 255, § 3976.)

VIII. The legacy has become part of the residuary estate for two reasons: 1st. Because, long before the same became payable, the legatee had lost its separate existence, and had in fact ceased to exist, leaving no successors or heirs. And 2d. Because, being a voluntary and unincorporated association, it could not, upon its merger, transfer or assign the legacy in question.

IX. The court, as a court of equity, cannot give effect to the intentions of the devisor, for the reason that the purposes of the trust are too indefinite and uncertain. (See Owens *a.* M. E.

Church, 4 *Kern.*, 385, opinion of DENIO, C. J.) The objects of the society designated in the will, as well as the objects of the present plaintiff, are loose and indefinite, and a court of equity cannot carry the same out.

X. If the present bequest is to be upheld, and then only as a charitable use, then the attorney-general can alone bring an action in the nature of an information. The present plaintiff, or the society for whom he sues, has no greater interest than all the people at large; and when such is the case, the attorney-general must alone bring the action. (4 *Kern.*, 380; Association for the relief of Indigent Females *a.* Beekman, 21 *Barb.*, 565; same case on appeal, 27 *Barb.*, 260.)

XI. The testator's executors were not made or constituted trustees, but rather as a medium through which the legacy was to pass. The treasurer of the society, or the society itself, was to be the trustee, and the purposes specified in Article II. of the constitution of the American Protestant Society, were the *cestuis que trust.*

XII. Again, conceding that the American Protestant Society, or the treasurer thereof, was the trustee, and that the legacy had vested, still upon the merger and consolidation, the legacy failed for the want of a trustee; for in the will there is no power of appointment of a trustee given, and a trustee cannot delegate his powers or make a trustee without being authorized so to do. (Andrew *a.* N. Y. Bible and Prayer-book Society, 4 *Sandf.*, 175, and cases cited; S. C., 4 *Seld.*, 563.)

XIII. If the foregoing reasoning be correct, then the complaint does not state facts sufficient to constitute a cause of action, and the defendant, by omitting to demur, has waived nothing. (*Code*, § 148.)

BY THE COURT.—HOGEBOOM, J.—This action is brought to require the defendants to pay the sum of $3,000, and interest, to the treasurer of the American and Foreign Christian Union, to be by him applied to such charitable uses and purposes as were directed in the will of the defendant's testator, or if such treasurer is not the proper person to receive the same, then to some suitable and proper person, to be appointed by the court as trustee, to receive the said fund, and to apply the same to and for the charitable uses and purposes set forth in the constitution of the Ameri-

can Protestant Society, and according to the last will and testament of Peter Chandler, deceased, under the direction of the American and Foreign Christian Union.

This is the prayer of the complaint, and the evident object of the suit. It was founded upon the will of Peter Chandler, late of Oswego county, deceased, dated the 30th day of November, 1847, and who died on or about the first day of January, 1848. That will contained the following clause:

"I give and bequeath to my executors the sum of three thousand dollars in trust, to pay over the same in six years from my decease, with interest after one year from my decease, to the person who, when the same is payable, shall act as treasurer of the American Protestant Society, reorganized in the city of New York under its present name in the year 1844, to be applied to the charitable uses and purposes of said society and under its directions."

The defendants refused to pay this legacy, and object to the recovery in this suit mainly on the following grounds: 1. That the American and Foreign Christian Union is not the society for whose benefit and to whose charitable uses and purposes the legacy was given, nor the legitimate successor of its name, principles, or objects. 2. That if it were, it has not such an interest in the legacy as would entitle it to maintain this action, and that additional or other parties are essential for that purpose. 3. That the plaintiff, as the president of that society, is not authorized to sue in his own name, as the representative. 4. That the legacy, if payable at all, is payable only to the treasurer of the institution to whom or which the legacy was given. 5. That the administration of the fund can only be enforced at the suit of the attorney-general, or some trustee to be appointed by the court in the place of one named in the will, whose office has become extinct, and whose functions have ceased by the extinction of the society named in the will.

1. Although the American and Foreign Christian Union is not the identical society, either in name or constitution, for the charitable uses and purposes of which the gift was intended, I am of opinion that it sufficiently represents it to be the recipient of the testator's bounty, and that the testator himself, if he could have foreseen the change of name which the American Protestant Society has undergone, and the enlargement of the

sphere of operations carried on under the auspices of the new
society, would not have diverted the destination of his charity
from the association now represented by the plaintiff.  The
original society has become extinct, or rather has been absorbed
in the society which is now in existence.  The essential objects
and policy of both are nearly identical, except that the sphere
of operations of the first was confined to the United States,
while that of the latter extends also to foreign nations.  It
would be the duty of the present society, if they receive this
gift, to devote it sacredly to the purposes designed by the giver,
and there is no reason to doubt that such is their intention, as
it is declared to be their wish by the prayer of the complaint;
and I am not sure that they would be beyond the power of this
court, if they should attempt hereafter in any way to divert it
from the purpose to which it was dedicated by the testator.

2. The American Foreign Christian Union (supposing it to
be identical with the American Protestant Society) has certain-
ly a species of interest in the legacy in question—the same
interest which all religious, benevolent, and charitable institu-
tions have in funds intrusted to them for benevolent objects.
It is not a personal interest, that is, a pecuniary interest, by which
the society or its stockholders are to be pecuniarily benefited,
but an interest in the sense of holding it as a trust, and disburs-
ing and administering it to accomplish the objects of the donor,
and the ends for which the society itself is instituted.  In this
respect it is the ultimate donee of the fund, as well as the
trustee to accomplish these objects, for there are no beneficiaries
beyond or behind it who have such an interest in the fund that
they can demand any portion of it to be appropriated for their
special benefit.  I think, therefore, if the gift had been directly
to this society, or, assuming its identity with the American
Protestant Society, directly to the latter, that it would have had
a sufficient interest in the fund, conceding its competency to
take such gift, to have invoked the aid of this court in requir-
ing its payment to them.

3. And if the gift had been thus made, I think we must hold,
in accordance with the general-term decision in Tibbetts *a.*
Blood (21 *Barb.*, 650),—construing the act of 1849 (ch. 258),
authorizing joint-stock companies or associations, consisting of
seven or more shareholders or associates, to sue in the name of

their president or treasurer, as amended by chap. 455 of the Laws of 1851, extending the provisions of the former act to "any company or association composed of not less than seven persons who are owners of or have any interest in any property, right of action, or demand, jointly or in common,"—that this suit would have been well brought in the name of the present plaintiff as president of the American and Foreign Christian Union. Some doubt has been thrown upon the construction of this latter act, and the extent to which its provisions shall be carried, by the opinion of Justice Shankland in the Court of Appeals, in the case of Austin *a.* Searing (16 *N. Y.*, 116), but the court expressly declined to pass upon that question, and we are therefore thrown back upon the case of Tibbetts *a.* Blood, and, in accordance with the general rule, to recognize as authority a general-term decision of this court in another district, until reversed in the Court of Appeals, we must hold in accordance with that decision.

4. It seems to me that the appropriate person, and perhaps the only appropriate person to prosecute for this legacy, is the treasurer of the American Protestant Society—or, if that society and officer have become extinct, his successor (if he be such), the treasurer of the American and Foreign Christian Union. It is to him, and only to him, that the legacy is given, or the legacy made payable, not for his own use, it is true, but for the purposes of the society of which he is an officer. Is there any doubt that if the original society had continued, and its corps of officers been maintained, that this officer could have enforced the payment to him of the legacy as against the executors of the estate, in the Surrogate's Court, or in the Supreme Court?

I think it clear also that the legacy vested at the testator's death, and that the time of payment only was postponed. The gift is a present one, at least to the executors, and from the time they hold it, they hold it as trustees for, and for the benefit of, the officer or institution to whom it is payable. Such was the evident intent of the testator, and it ought not to be defeated. It did not fail, therefore, by the demise of the original society, or its absorption into the present association, before the time of payment arrived; but the executors still retain it for the benefit of the legitimate successor of the treasurer named in the will, and to such successor the executors may, by the aid of this

court, be compelled to pay it. But such payment must be enforced, I think, by such officer himself, prosecuting on his own behalf. It would be an anomaly in the law to sustain a suit by one person, to enforce payment, not to himself, but to a third person. The party has not a standing in court for such purpose. The suit should be brought by the real party in interest, or by the party who occupies the position of the trustee of an express trust for others.

I think, therefore, the action is misconceived, and that this is an objection which need not be taken by demurrer, or by answer; but may be taken on the trial, on the ground that neither the complaint nor proof shows facts sufficient to constitute a cause of action, that is (and it is that which the Code means), a cause of action in favor of the plaintiff against the defendants.

5. Nor do I think this suit can, or, in its present condition, ought to be sustained as a proceeding for the appointment of a new trustee. Such was not the nature or intent of the action, nor such the theory upon which it has been prosecuted. No such question was made or considered upon the trial, nor is the issue adapted to such an object. The usual mode of appointing a new trustee is by petition, though perhaps it may be appropriately done by bill. (1 *Rev. Stat.*, 730.) But the allegations on the bill, and the prayer for relief, should be properly phrased directly to compass that object, whereas the palpable object of the present suit is to show that the institution represented by the plaintiff is the legitimate successor and representative of the American Protestant Society ; that as such, it is beneficially entitled to the legacy in question, and therefore seeks to enforce the payment thereof with costs against recusant defendants who refuse to pay the same. The appointment of a trustee is incidentally suggested, it is true, in the prayer for relief as the proposed recipient of the fund, in case the court shall conclude that the treasurer of the American and Foreign Christian Union is not the appropriate officer for such purpose; but this incidental object ought not, I think, to induce us to overlook the main and leading purpose of the litigation, nor does it justify bringing the defendants into court upon a question in which, if such were the sole object, they have so remote and scarcely appreciable an interest. I am, therefore, opposed to con-

verting this suit into one for the mere appointment of a new trustee.

I think, therefore, the referee was right in the conclusion to which he arrived, that the action, in its present form, is not maintainable. But it being an equity suit, in which a dismissal of the complaint is ordinarily equivalent to a decision upon the merits against the complainant, and a bar to a new action, it ought to have been dismissed without prejudice to a new action by a proper party or proper parties, and without prejudice to proceedings for the appointment of a new trustee in the place of the treasurer of the defunct American Protestant Society, if such course shall be thought proper by parties interested, and the institution of a new suit by such new trustee, if the parties interested shall be so advised.

The judgment of the special term should be thus modified, and neither party should have costs as against the other on this appeal.

SUTHERLAND and BONNEY, JJ., concurred in the result of the foregoing opinion.

---

# VAN WYCK a. HARDY.

*Supreme Court, First District ; General Term, December, 1860.*

PARTITION.—AMENDMENT OF SUMMONS.—OF PETITION.—SERVICE
BY PUBLICATION.

Where, in a partition suit, the names of certain defendants, through inadvertence, were omitted from the copy summons filed ;—

*Held*, that this was not conclusive that they had not been made parties, and they having been actually parties, the summons might be amended after judgment and sale.

Where the summons, as published, was dated New York, and stated that the complaint was filed in the clerk's office in that city ;—

*Held*, that designating the place of the office of the attorney, by street and number, without adding the name of the city, did not render it void.