JOHN HOPE, by Guardian, etc., Appellant, *v.* WILLIAM A. BREWER, Jr., et al., Individually and as Executors, etc., et al., Respondents.

A disposition of personal property, made in this state by a competent testator, in a valid testamentary instrument, to trustees in a foreign country, for the purposes of a charity to be established in that country, is valid although not in compliance with the statute or rules of law in force in this state in regard to trusts and perpetuities, providing it is valid by the law of the place where the gift is to take effect and which governs the trustees and the property when transmitted there.

In such a case the courts of this state will not interpose its laws to arrest the disposition made by the testator; but *it seems* will simply inquire : first, as to whether all the forms and requisites necessary to constitute a valid testamentary instrument have been complied with, and, second, whether the foreign trustees are com petent to take the gift for the purposes expressed and to administer the trust under the law of the country where the gift is to take effect.

The will of H. directed his executors to sell his residuary real estate and to convert all his residuary estate into money as soon after his decease

as they could conveniently do so, and to pay over the whole proceeds thereof to three trustees named, residing in Scotland, in trust for the founding, endowing and maintaining of a charitable institution for sick and infirm persons in certain localities in Scotland of which said trustees and their successors were to be the governors and for the relief of such persons outside of the institution; they to be the sole judges as to who should be entitled to the benefits of the charity. In an action to determine the validity of these provisions, it appeared that such a trust is valid under the laws of Scotland. *Held*, that the direction to sell, operated to convert the real estate into personalty; and that the provisions were valid.

*Bascom* v. *Albertson* (34 N. Y. 587), distinguished and limited.

(Argued October 27, 1892; decided November 29, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 2, 1892, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought to determine as to the validity of certain provisions of the last will and testament and codicils of Thomas Hope, the deceased.

The facts, so far as material, are stated in the opinion.

*Delos McCurdy* for appellant. The validity of the gift of the residuary estate must be determined by the laws of this state. (*Holmes* v. *Remsen*, 4 Johns. Ch. 460, 469; *Mills* v. *Fogal*, 4 Edw. Ch. 559; *Andrews* v. *Herriot*, 4 Cow. 517; *Parsons* v. *Lyman*, 20 N. Y. 112; *Bascom* v. *Albertson*, 34 id. 587; *Manice* v. *Manice*, 43 id. 303; *Chamberlain* v. *Chamberlain*, 43 id. 424; *Draper* v. *Harvard College*, 57 How. Pr. 269; *Kennedy* v. *Town of Palmer*, 1 T. & C. 581; *Harris* v. *A. B. Soc.*, 4 Abb. [N. S.] 421; *Sherwood* v. *A. B. Soc.*, 1 Keyes, 565; *Riley* v. *Diggs*, 2 Dem. 184; *In re Bullock*, 6 id. 335; *In re Huss*, 127 N. Y. 537; *Hollis* v. *D. T. Sem.*, 95 id. 166; *Oliphant* v. *Hendrie*, 1 Bro. [C. C.] 571; *Campbell* v. *Radnor*, 1 id. 271; *Atty.-Gen.* v. *Bishop of Chester*, 1 id. 444; *Atty.-Gen.* v. *City of London*, 3 id. 171; 1 Ves. Jr. 243; *Atty.-Gen.* v. *Lepine*, 19 Ves. 309; 2 Sw.

181; *G. P. Soc.* v. *Atty.-Gen.* 3 Russ. 142; *Curtis* v. *Hutton,* 14 Ves. 537; *Mackintosh* v. *Townsend,* 16 id. 330; *Provost of Edin* v. *Aubry,* Ambl. 236; *Emery* v. *Hill,* 1 Russ. 111; *Collyer* v. *Burnett,* Taml. 79; *Mayor* v. *E. I. Co.,* 1 Moore, P. C. 175; *Mitford* v. *Reynolds,* 1 P. W. Ch. 185; *New* v. *Bonalser,* 36 L. J. Ch. 846; *Atty.-Gen.* v. *Sturge,* 23 id. 495; *Burbank* v. *Whitney,* 24 Pick. 146.) The gift in the twenty-sixth clause of the will as modified by the second codicil is an executory devise of the residuary estate, real and personal, to an institution not in existence at the testator's death, but to be thereafter established. (*Cadell* v. *Palmer,* 1 Cl. & Fin. 372–423; 4 Kent's Comm. 267; 1 Jarm. on Wills, 221; 4 Cruise Dig. tit. 32, chap. 24, § 18; *Nightingale* v. *Burrill,* 15 Pick. 111; Atk. on Conveyancing [2d ed.], 264; *P. B. Church* v. *Grant,* 3 Gray, 142; Lewis on Perpetuities, 163–172; *Hooper* v. *Hooper,* 9 Cush. 122; *Thorndike* v. *Loring,* 15 Gray, 391; *Fosdick* v. *Fosdick,* 6 Allen, 41; *Odell* v. *Odell,* 10 id. 1; *Loring* v. *Blake,* 98 Mass. 253; *Sears* v. *Putnam,* 102 id. 5; *Jocelyn* v. *Nott,* 44 Conn. 55; *Donohue* v. *McNichol,* 61 Penn. St.; *Patterson* v. *Ellis,* 11 Wend. 259; *Hawley* v. *James,* 16 id. 120; *Schettler* v. *Smith,* 41 N. Y. 344; *Knox* v. *Jones,* 47 id. 389–391; *Yates* v. *Yates,* 9 Barb. 324; *Gott* v. *Cook,* 7 Paige, 540; *Boynton* v. *Hoyt,* 1 Denio, 53.) If the claim is made that this is a present bequest to an institution not *in esse,* the gift is void. (Fearne on Remainders, 536; *Chamberlayne* v. *Brockett,* L. R. [8 Ch.] 206–211; *Cherry* v. *Mott,* 1 Myl. & Cr. 123, 131, 132; *Atty.-Gen.* v. *Goulding,* 2 Bro. [C. C.] 428; *Atty.-Gen.* v. *Bishop of Oxford,* 4 Ves. 431; *Jocelyn* v. *Nott,* 44 Conn. 55; *Nightingale* v. *Burrill,* 15 Pick. 111; *Hawley* v. *James,* 16 Wend. 133–274; *Boynton* v. *Hoyt,* 1 Den. 57; *Yates* v. *Yates,* 9 Barb. 346; *Phelps* v. *Pond,* 23 N. Y. 69; *Bascom* v. *Albertson,* 43 id. 596; *Rose* v. *Rose,* 4 Abb. Ct. App. Dec. 108.)

*James Thompson* for respondents. The entire estate of the testator must be regarded as consisting of personal property. (95 N. Y. 588; *Lent* v. *Howard,* 89 id. 169; *Kane* v.

*Gott*, 24 Wend. 641; *Stagg* v. *Jackson*, 1 N. Y. 206; *Chamberlain* v. *Chamberlain*, 43 id. 424; *Everitt* v. *Everitt*, 29 id. 39; *Phelps* v. *Pond*, 23 id. 69; *Davis* v. *Gallagher*, 124 id. 487; *Vincent* v. *Newhouse*, 83 id. 505; *Fraser* v. *Trustees, etc.*, 124 id. 479; *Underwood* v. *Curtis*, 127 id. 523; *Chamberlain* v. *Taylor*, 105 id. 185; *Ross* v. *Roberts*, 2 Hun, 90; 63 N. Y. 652; *Riley* v. *Diggs*, 2 Dem. 184.) The residuary estate must be paid over to the Scotch trustees to be dealt with by the Scotch courts. (*Hollis* v. *D. T. Sem.*, 95 N. Y. 166; *Beekmann* v. *Bonsor*, 23 id. 298; *Downing* v. *Marshall*, Id. 366; *Levy* v. *Levy*, 33 id. 97; *Rose* v. *R. B. Ass.*, 4 Abb. Ct. App. Dec. 108; *Bascom* v. *Albertson*, 34 N. Y. 584; *Burrill* v. *Boardman*, 43 id. 254; *Holland* v. *Alcock*, 108 id. 312; *Vansant* v. *Roberts*, 3 Md. 119; *Draper* v. *Harvard College*, 57 How. Pr. 269; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Despard* v. *Churchill*, 53 id. 192; *In re Huss*, 127 id. 537.) The doctrine laid down in the *Chamberlain* case is not confined to the state of New York. (*Taylor* v. *Trustees, etc.*, 34 N. J. Eq. 101; *Ford* v. *Ford*, 70 Wis. 19; 72 id. 621, 624–627; *Burbank* v. *Whitney*, 24 Pick. 146; *Harrison* v. *Nixon*, 9 Pet. 488; *Oliphant* v. *Hendrie*, 1 Browns. Ch. 571.) The principles of law in respect to the *lex domicilii* governing as to personal property, and the *lex loci rei sitæ* governing as to real property have no relation with the present case. (*Warner* v. *Jaffray*, 96 N. Y. 248; *People ex rel.* v. *Comrs. of Taxes*, 23 id. 225; *Jefferson* v. *Smith*, 88 id. 576.) The contention of the plaintiff at Special Term and at General Term that the period within which the executors of the will are to pay over the fund to Messrs. Malcolm, Maxwell and Smellie is not limited upon a life or lives, is without merit. (*In re Crawford*, 113 N. Y. 560; *Laytin* v. *Davidson*, 95 id. 263; *Robert* v. *Corning*, 89 id. 225; *Radley* v. *Kuhn*, 97 id. 26; *Greene* v. *Greene*, 125 id. 506; *Stewart* v. *Hamilton*, 37 Hun, 19.) The disposition made by testator of his residuary estate is valid under the law of Scotland. (Code Civ. Pro. § 942; *Livingston* v. *M. Ins. Co.*, 6 Cranch, 274; *Dundee* v. *Morris*, 3 Macg. 134.) There is no

indefiniteness or uncertainty in the disposition of the residuary estate, as claimed in the complaint. (2 Story's Eq. Juris. § 1186; *Hill* v. *Burns*, 2 W. & S. 80; *Black* v. *Miller*, 2 S. & M. 866.)

*Robert Hunter McGrath, Jr.,* for respondents. The twenty-seventh article of the last will and testament of Thomas Hope works a conversion of the real estate of which he died seized into personalty, and subjects that real estate to the operation of the rules of law which govern the devolution of personal property. (*Asche* v. *Asche*, 113 N. Y. 232; *Moncrief* v. *Ross*, 50 id. 431; *Chamberlain* v. *Chamberlain*, 43 id. 424; *Power* v. *Cassidy*, 79 id. 602; *Vincent* v. *Newhouse*, 83 id. 505.) The bequest made by the codicil of October 24, 1888, to Malcolm, Maxwell and Smellie, residents of Scotland, is under the law of Scotland a legal and valid bequest to them as trustees for a charitable use. (Code Civ. Pro. § 942; *Magistrates of Dundee* v. *Morris*, 3 Mac. 134; *Bruce* v. *Welch*, 6 Sess. Cas. 940.) The bequest being valid under the law of Scotland, the foreign legatees, who are not shown to be subject to any disability here or at the place of their domicile, are competent to take the estate. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *In re Huss*, 126 id. 537, 544; 1 Roper on Legacies, 28 to 31; 2 Bouvier Law Dict. 61.) The bequest here assailed is legal and valid, and the court has properly directed that the residuary estate be paid over to the trustees. (*Manice* v. *Manice*, 43 N. Y. 303; *Chamberlain* v. *Chamberlain*, Id. 424; *Draper* v. *Harvard College*, 57 How. Pr. 269; *Kennedy* v. *Town of Palmer*, 1 T. & C. 581; *Mapes A. H. M. Society*, 33 Hun, 360; *Reilly* v. *Diggs*, 2 Dem. 184; *In re Bullock*, 6 id. 335; *Despard* v. *Churchill*, 53 N. Y. 192; *In re Huss*, 126 id. 537; *Cross* v. *U. S. T. Co.* 131 id. 330.)

O'Brien, J. The general question presented by this appeal is the validity of the twenty-sixth or residuary clause of the will of Thomas Hope, who died on March 3, 1890, without issue. The will contains numerous bequests to collateral rela-

tives and to institutions and corporations for charitable pur-
poses.    By the residuary clause all the rest, residue and
remainder of the testator's estate was devised and bequeathed
to his executors and their survivors, in trust, for the purpose
of founding and endowing an infirmary for the care and
relief of sick and infirm persons, to be established at the tes-
tator's native place of Langholm, in Dumfrieshire, Scotland.
The testator directed his executors, as trustees, to promptly
take all necessary and proper steps for procuring the incor-
poration and organization of this infirmary.    He further
directed that if within three years from his decease, and dur-
ing the lives of the two executors and trustees named, or
within the three years and during the life of either of
them, such infirmary was incorporated and organized, so
as to be able to take the bequests, and should, in respect to its
organization purposes and plan of management, be accepted as
satisfactory by the trustees, or the survivor of them, then the
trustees, or the survivor of them, should forthwith, or as soon
as practicable, sell and convert into money all of the said prop-
erty remaining unsold, and pay over the whole of said trust
fund or estate to such infirmary, to have and to hold forever
for its uses and purposes.    But if an infirmary, in accordance
with these provisions, should not be incorporated and organ-
ized and be accepted as satisfactory by the trustees, within
three years after the testator's death, and during the life of the
trustees, then the trustees, or the survivor and his or their suc-
cessor or successors, were directed to divide the whole of the
said trust fund and estate among, and to pay it over to, such
charitable institutions then established and existing at Lang-
holm and competent to take the same, as the trustees should
decide, and in such proportions as they or the survivor of them
might think proper.    The testator left both real and personal
estate, and in a subsequent clause of the will the executors
were directed to sell the real estate and convert the same into
money as soon after the testator's death as convenient.    The
will bears date June 12, 1886, but the residuary clause was
materially changed and modified by subsequent codicils.    The

first codicil, bearing date November 24, 1886, directed that in case the trustees should meet with any difficulties or cause of delay in incorporating and organizing the infirmary provided for in the will, they were authorized and directed, if lawful so to do, to realize the whole of the residuary estate and pay the same over to three trustees in Scotland, named in the codicil, for the purpose of establishing and maintaining such infirmary, and the testator gives directions for the government of the institution and the investment of the fund. It is not necessary to make further reference to this codicil, as it was substantially abrogated by another, bearing date October 24, 1888, and which furnishes the principal ground for this controversy. The twenty-sixth or residuary clause of the will, as well as the first codicil, in so far as they relate to the founding and endowment of the infirmary in Scotland, were also changed and modified by this second codicil by substituting the following provision: " Instead of said institution being founded and endowed by said trustees in the manner therein mentioned, I direct them, as soon after my decease as they can conveniently do so, to realize all the rest, residue and remainder of my said property and estate so bequeathed to them, and to pay, assign and make over the whole proceeds thereof, when and as realized, to and in favor of William Elphinstone Malcolm * * * George Maxwell * * * and Robert Smellie, residing in Langholm aforesaid, * * * as trustees and in trust, to the end that they may apply the same in founding, endowing and maintaining an institution for the care or relief of sick or infirm persons, to be established and located at Langholm, my native place, * * * and to be called ' The Thomas Hope Hospital.' " These Scotch trustees and their successors are made perpetual governors of the hospital, and are directed and empowered to apply the funds to be received by them from the executors to the erection, completion and organization of the hospital, and provision is made in great detail with respect to the investment of the fund and the application of the income. Power is also expressly conferred upon the governors of the institution to enact statutes and by-laws for its

government and to change or modify them at their pleasure whenever in their judgment the object of the charity would be promoted thereby. The particular beneficiaries of the trust, or the persons to be received and cared for in the hospital, are described by the testator in the codicil in the following language:

" And I recommend and appoint the preferences of admission to the said hospital to be as follows, viz., (first) sick or infirm persons, natives of and resident in the said town of Langholm, or the parish of Langholm, or such other parishes in the county of Dumfries as the said governors and trustees in Scotland may from time to time select and determine; (second) sick or infirm persons, natives of or resident in the said town or parishes as aforesaid. And I declare that the said governors and trustees in Scotland shall be the sole judges as to the eligibility of the persons to be admitted to the said hospital and benefits thereof, or to participate in this endowment, and shall likewise be the sole judges when any such sick or infirm person shall cease to be an inmate of said hospital, or be recipient of the funds of the endowment. And I empower the said governors and trustees in Scotland, at their discretion, and if the funds will admit thereof, to give and afford out of said revenues such assistance as they may think suitable to such sick, infirm or aged persons in reduced circumstances, natives of or resident in the said town of Langholm, or parishes as aforesaid, as they may judge to be proper objects of this endowment, without the necessity of their being admitted to the said hospital."

The scheme of the original will contemplated the foundation, endowment and management of the hospital by the executors as trustees. The codicil required the executors to convert the residuary estate into money and pay the same over to the Scotch trustees, who were empowered to establish the institution and administer the charity. It has been found as a fact by the trial court, and is not now disputed, that this disposition of the residuary estate contained in the residuary clause in the will and in the second codicil is perfectly valid

under the laws of Scotland. The foreign trustees are competent to take the fund and to administer the trust under Scotch law. The power and duty of the executors to convert the estate into money is thus expressed by the testator immediately following the residuary clause :

" It is my will that my executors hereinafter named, as soon as may be conveniently done after my death, shall sell and convert into money all the real estate, of every name or nature and wheresoever situated, of which I shall die seized, possessed or entitled unto, and I hereby authorize and empower my said executors, and the survivor of them, to sell and dispose of said real estate at public or private sale at such time or times, and in such parcels, and upon such terms, and in such manner as to them shall seem meet."

This provision of the will operates to convert the real estate of which Thomas Hope died seized into personalty, and subjects it to the operation of the rules of law governing the devolution of personal property. (*Moncrief* v. *Ross*, 50 N. Y. 431; *Power* v. *Cassidy*, 79 id. 602; *Vincent* v. *Newhouse*, 83 id. 505; *Asche* v. *Asche*, 113 id. 232; *Fraser* v. *Trustees of the P. C.*, 124 id. 479; *Underwood* v. *Curtis*, 127 id. 523; *Lent* v. *Howard*, 89 id. 169; Bispham's Principles of Equity, §§ 311, 312.)

The plaintiff is the nephew of the testator and one of the legatees under the will, and he brings this action to set aside as void the disposition of the residuary estate contained in the twenty-sixth clause and the codicils, on the ground that the several provisions for the establishment of the infirmary or hospital are too indefinite and uncertain in their subjects and objects, and unlawfully suspend the power of alienation of real estate and the absolute ownership of personal property. The courts below have in all respects sustained the validity of the will and codicils, and the plaintiff alone appeals from the judgment. Although it appears that when the testator made the final provision contained in the second codicil for the establishment of a charity in his native place, he was temporarily residing at that place in Scotland, it is found that at the time that

the will and codicils were executed he was domiciled in this state, and the will has been proved and established here. The scheme of the testator, as outlined in the residuary clause of the will, contemplated the creation of a corporation to hold the property and administer the charity, but in the second codicil the execution of the trust through a corporation to be created in the future seems to have been abandoned. The testator there finally provided that the Scotch trustees named should take and hold the fund and apply it as trustees to the erection of proper buildings upon land already purchased by the testator and conveyed to them as trustees, and to the furnishing of the same in a manner suitable for the purposes of the institution, and the income of the balance to be applied to the maintenance of the same. The three trustees and their successors in perpetuity were to be the governors and managers, and as such they were to hold and own the property for the purposes of the trust. The functions of the two executors with respect to the fund were administrative merely. They were to pay the debts and legacies, and pay the residuary fund over to the Scotch trustees, and then their powers and duties terminated. Henceforth both the title and management of the fund was conferred by the will and codicil upon the foreign trustees. I am unable to see how the vesting of the estate was postponed or the absolute ownership suspended in consequence of any power or duty conferred upon the executors for any period of time whatever. The payment of the bequest of the residuary estate to the trustees in Scotland was to be made by the executors as soon and when the same was converted into money. The fact that such conversion might require a period of time not measured by lives does not create an unlawful perpetuity. It was said in *Roberts* v. *Corning* (89 N. Y. 228) that such result is accomplished only when there are no persons in being by whom an absolute fee in possession can be conveyed and that a discretionary power conferred upon executors, with respect to the time of sale, did not suspend the power of sale or the absolute ownership. It was within the legal power of the executors to convert the whole estate into money the day

after their appointment and qualification, and to pay over the residuary fund to the foreign trustees and this fact would seem to constitute a sufficient answer to the contention that the absolute ownership was suspended, by reason of any power or duty conferred upon the executors. Reference has already been made to the language of the will and codicil wherein the testator undertook to specify and define the persons who were to be the recipients of his charity, or the beneficiaries of the trust. There is no defined beneficiary either named or capable of being ascertained within the rules of law applicable to such cases, in order to constitute a valid testamentary trust under the law of this state. The words "sick, infirm or aged persons in reduced circumstances," within a certain town or parish or within such other towns and parishes in a certain county, as the governors of the institution might from time to time select and determine, are entirely too vague and indefinite to satisfy the rule, with respect to the beneficiaries of a trust, which prevails in this state. (*Fosdick et al.* v. *Town of Hempstead*, 125 N. Y. 581; *Holland* v. *Alcock*, 108 id. 312.) The principle upon which this rule is founded or at least one of the reasons for the rule is that such a trust is incapable of enforcement and in some of the cases there was no trustee competent to take. Here, however, the trustees are competent to take and hold the fund and the execution of the trust does not depend upon the will of the trustees, but upon the law of the country where the testator directed the fund to be used and the power of its courts over the trustees in the application and management of the property. The fund can lawfully be held and the will of the donor fully carried out at the place where he intended to found the charity and in the manner prescribed by him. This brings us to the important question in this case whether the courts of this state are required in such a case to interpose our own laws with respect to the requisites of a valid testamentary trust in order to defeat the disposition which the testator has made of his property and which is perfectly valid where he intended the gift to take effect.

In the great variety of cases bearing upon the validity of trusts of this character and in the manifold aspects in which questions growing out of such dispositions of property have arisen and been presented to the courts, it is not, perhaps, surprising that in some of the opinions of the courts, dicta, expressed in general language, may be found giving support to the plaintiff's contention. But I have not been able to find any well-considered case, in which the question was directly involved where a gift to a foreign charity in trust, contained in a valid testamentary instrument, has been held void, where there was a trustee competent to take and hold, and the trust was capable of being executed and enforced, according to the law of the place to which the property was to be transmitted under the will of the donor. The law of this state inhibiting the creation of trusts not expressly authorized by statute and the suspension of the power of alienation of real estate and the absolute ownership of personal property, is founded upon a public policy of our own. It was said of the English Statute of Mortmain that its object was political and intended to have but a local operation. It was enacted to prevent what was deemed a public mischief and not to regulate, as between ancestor and heir, the power of disposing by will, or to prescribe, as between grantor and grantee the forms of alienation. It is an incident only, and with reference to a particular object, that the exercise of the owner's dominion over his property is abridged. The restraints which the statutes imposed upon owners of property has reference to a mischief existing in England only. (*Atty.-Genl.* v. *Stewart,* 2 Mer. 143.)

Statutes of a kindred nature enacted in this state and in the various states of the Union, whatever their form, were intended to operate within and promote the welfare of the people of each particular state, and it was not contemplated that they should have any extra territorial effect. It is not a matter of any public concern whatever to this state whether the personal property of a person domiciled here shall pass to his heirs or next of kin in a foreign country, or to trustees in trust for charity residing there, or even to a foreign corporation for

purposes of charity. (*Vansant* v. *Roberts*, 3 Maryl. 119.) Our law with respect to the creation of trusts, the suspension of the power of alienation of real estate, and the absolute ownership of personal, was designed only to regulate the holding of property under our laws and in our state, and a trust intended to take effect in another state, or in a foreign country, would not seem to be within either its letter or spirit. When a citizen of this state, or a person domiciled here, makes a gift of personal estate to foreign trustees for the purpose of a foreign charity, our courts will not interpose our local laws with respect to trusts and accumulations to arrest the disposition made by the owner of his property, but will inquire as to two things : First, whether all the forms and requisites necessary to constitute a valid testamentary instrument, under our law, have been complied with ; and second, whether the foreign trustees are competent to take the gift, for the purposes expressed, and to administer the trust under the law of the country where the gift was to take effect, or, as Judge Rapallo stated, the rule with respect to gifts to charity generally, the inquiry is " whether the grantor or devisor of a fund designed for charity is competent to give, and whether the organized body is endowed by law with capacity to receive and to hold and administer the gift." (*Holland* v. *Alcock, supra*, p. 337.) In this case the testator was unquestionably competent to give and did make the gift under all the forms and requisites necessary to constitute a valid testamentary disposition. So were the trustees to whom the gift was made competent to take and administer it, under Scotch law, and the only question is whether we must defeat the gift and frustrate the intentions of the testator because he neglected to observe, in all respects, the rules of our local law with regard to the creation of trusts and perpetuities. Unless we are concluded upon this question by established principles of law, there is no reason growing out of the facts surrounding the case, or founded upon public policy, for diverting the property into channels not contemplated by the testator. It is no doubt true that the validity of a disposition of personal property at the domicile of the

owner is generally the test of its validity in other jurisdictions. But this rule, I apprehend, only requires compliance with forms and with principles of law generally or universally recognized as essential to the transfer or transmission of property. If personal property is disposed of by will and in trust for charity, to take effect in another country, no good reason is apparent for insisting that a full compliance with the local law of the domicile, with respect to the form or duration of the trust, or the definition of the beneficiaries, is necessary to the validity of the disposition. Such laws are not generally regarded as limitations upon the power of the owner to transfer or transmit the property, but regulations applicable to the holding of property in the particular community, founded upon political or social considerations. In *Cross* v. *United States Trust Co.* (131 N. Y. 330) we held that a disposition of personal property by will and in the form of a trust, to be executed in this state, made by a person domiciled in another state, valid at the place of the domicile, was valid here, though the absolute ownership of the property was suspended for a period longer than is permitted by our statute. The principal ground of that decision was that our courts were required, under the doctrine of comity, to recognize the disposition of personal property made in another state as valid, if valid there, and not in its nature unlawful, or against public policy. In the creation of the trust our statute, in regard to perpetuities, was disregarded, but we held that it did not apply to a will made by a person who was domiciled in another state. In order to sustain this will, we must go a step farther and hold another but a kindred proposition, namely, that a disposition of personal property made in this state, by a competent testator, in a valid testamentary instrument, to trustees in a foreign country, for the purposes of a charity to be established in that country, is valid, although not in compliance with our statute or the rules of law in force here in regard to trusts and perpetuities, providing it is valid by the law of the place where the gift is to take effect, and which governs the trustee and the property when transmitted there. If our statute, as I have attempted to

show, does not apply to such a case, then there is nothing in the way of the validity of such a disposition of property. The question has been often referred to in this court, and though the precise question was not involved, the expressions of opinion are in favor of sustaining this will. In the leading case of *Chamberlain* v. *Chamberlain* (43 N. Y. 424), Allen, J., discussing the question, said : " The courts of this state will not administer a foreign charity, but they will direct money devoted to it to be paid over to the proper parties, leaving it to the courts of the state within which the charity is to be established, to provide for its due administration and for the proper application of the legacy (Hill on Trustees, 468 ; 2 Story on Equity Jurisdiction, § 430 ; *Provost of Edinburgh* v. *Aubery*, Ambbler, 236 ; *Burbank* v. *Whitney*, 24 Pick. 154 ; *Att'y-General* v. *Lepine*, 2 Swanst, 181.)" * * * " A gift by will of a citizen of this state to a charity or upon a trust to be administered in a sister state, which would be lawful in this state, the domicile of the donor, would not be sustained if it was not in accordance with the laws of the state in which the fund was to be administered. Bequests in aid of foreign charities, valid and legal in the place of their existence, will be supported by the courts of the state in which the bequests are made. (Hill on Trustees, 457.) If the legatee, whether a natural or artificial person, and whether he takes in his own right, or in trust, is capable, by the law of his domicile, to take the legacy in the capacity and for the purposes for which it is given, and the bequest is in other respects valid, it will be sustained irrespective of the law of the testator's domicile." * * * " It is no part of the policy of the state of New York to interdict perpetuities or gifts in mortmain in Pennsylvania or California. Each state determines these matters according to its own views of policy or right, and no other state has any interest in the question, and there is no reason why the courts of this state should follow the funds bequeathed to the Centenary Fund Society to Pennsylvania to see whether they will be administered in all respects in strict harmony with our policy and our laws. The question was before the court in *Fordyce*

v. *Bridges* (2 Phillips, 497) upon the bequest of a fund in
England to be invested in a Scotch entail. Lord Cottenham
says: ' An objection was made that the bequest of a fund, to
be invested in a regular Scotch entail, was void as a perpetuity.
The rules acted upon by the courts of this country with respect
to testamentary disposition tending to perpetuities, relate to
this country only. What the law of Scotland may be upon
such a subject the courts of this country have no judicial
knowledge, nor will they, I apprehend, inquire. The fund
being to be administered in a foreign country, is payable here,
though the purpose to which it is to be applied would have
been illegal, if the administration of the fund had been to take
place in this country. This is exemplified by the well estab-
lished rule in cases of bequests within the statute of mortmain.
A charity legacy, void in this country under the statute of
mortmain, is good and payable here if for a charity in Scot-
land.' To the same effect is *Vanzant* v. *Roberts* (3 Mary-
land 119)."

In the case of *Manice* v. *Manice* (43 N. Y. 303), Judge
Rapallo discussing the validity of a bequest by a person domi-
ciled in this State to Yale College said :

"The direction to pay to the treasurer is a good gift to the
college, the college having been shown to be capable of taking.
(*Emery* v. *Hill*, 1 Russ. 112; *De Witt* v. *Chandler*, 11 Abb.
Pr. 459; *Hornbeck* v. *Am. Bible Society*, 2 Sandf. Chy. 133.)
The college is a foreign corporation, it being authorized by the
laws of its own State to take." * * * After discussing
the question whether the words of the will were sufficient to
create a trust the learned judge continued :

"These are questions, however, which must necessarily be
determined by the courts of the state in which the corpora-
tion legatee is situated. The fund is to go there, and be there
administered. The will of the testator, so far as the courts of
this state can act upon it, is fully executed, when the money
is paid to the proper officer of the foreign corporation ; and
there is no law of this state prohibiting gifts to such foreign
corporation.

"Though the laws of the state of that corporation may permit it to hold and administer property in perpetuity, or to accumulate it, the local policy of this state upon that subject is not interfered with, by allowing property of our citizens to pass to such foreign corporation, and be administered by it in such foreign state according to its own laws. (*Fordyce* v. *Bridges,* 10 Beavan, 105 ; *S. C.* 2 Phillips, 497 ; *Vansant* v. *Roberts,* 3 Maryl. 119 ; *Chamberlain* v. *Chamberlain,* post 424.)"

The same doctrine was approved on the subsequent case of *Despard* v. *Churchill* (53 N. Y. 192), and property in this state of a testator in California was remitted to that state to be administered under the will notwithstanding it was devoted to the purposes of a trust which would have been unlawful in this state, though valid there. We have recently held that a bequest of the residuary estate of a testator domiciled here to a municipality in the German Empire was valid, it appearing that the municipality had capacity by the law of the place to take and hold the gift. (Matter of Huss, 126 N. Y. 537 ; see also, *Kerr* v. *Dougherty,* 79 id. 327 ; *Hallis* v. *The Drew Theological Seminary,* 95 id. 166.)

We have examined the cases cited by the learned counsel for the plaintiff in support of his contention. They contain general expressions of the rule that a testamentary disposition of property invalid at the domicile of the owner is invalid everywhere, and indeed this rule is stated in some of the cases to which I have referred and, as a general principle, can not be questioned. But when it is said that such a disposition is invalid everywhere if invalid at the domicile, the rule refers to some defect in the execution of the instrument, the capacity of the testator, the legal construction of the instrument, the form or object of the disposition and not to the noncompliance, in framing the terms of the trust, with a local statute or rule of law, regulating the holding of property by the citizens of the state or country where the will was made, and which had no extra territorial force. Perhaps the strongest case in support of the plaintiff's view is that of *Bascom* v. *Albertson* (34 N.

Y. 587). In that case there was a bequest of the residuary estate by a testator in this state to five unnamed persons as trustees to be appointed by the Supreme Court of the State of Vermont, to found and establish an institution in that state for the education of females. This bequest was held to be void. The discussion in this court proceeded almost entirely upon the question whether it could be sustained under the English doctrine of charitable uses sanctioned by a majority of the court in *Williams* v. *Williams* (8 N. Y. 525), and it was held that it could not. The case differs from the one at bar in at least one important particular. The testator failed to appoint trustees competent to take and it did not appear that those appointed by the action of the judges of the Supreme Court of Vermont could take or hold, or that the trust could be administered under the laws of that state. Besides the views expressed in the prevailing opinion, in so far as they are in conflict with the judgment now under review, must be deemed to be modified by the subsequent cases of *Chamberlain* v. *Chamberlain, Manice* v. *Manice* and *Despard* v. *Churchill* (*supra*). Our conclusion is that, even if it be assumed that the bequest of the residuary estate to the Scotch trustees in trust for the purpose of founding and maintaining the hospital, should be held void under our law for the reason that the absolute ownership of personal property is unlawfully suspended or that the beneficiaries of the trust are not sufficiently specified or defined, still that does not render the disposition invalid as these objections do not apply to a gift in trust to be administered in Scotland and perfectly valid there. This result, I think, is in harmony with the general tendency of courts to sustain testamentary dispositions of property when it fairly can be done under the rules of law, and in accordance with principles of enlightened justice. The judgment should therefore be affirmed with costs to the executors, the foreign trustees and the plaintiff payable out of the estate.

All concur.

Judgment affirmed.