In the Matter of the Construction of the Will of MARIAM A. GRANT, Deceased.

Surrogate's Court, Bronx County, December 14, 1950.

*George E. Cleary* and *John F. Ward* for Commercial Trust Co. of New Jersey, as executor of Mariam A. Grant, deceased, petitioner.

*Louis O. Bergh* for Stanley A. Button and another, respondents.

HENDERSON, S. This is a proceeding to construe the holographic will of Mariam A. Grant, who died a resident of Bronx County on June 21, 1948.

The distributees herein, all residents of Australia are five sisters, one brother and three nephews and a niece, the children of a predeceased brother. Only two of the nephews have interposed an answer to this proceeding.

The decedent in article " Fourthly " of her will directed that " the residue shall be placed in trust " by her " Trustees in Australia," her three sisters, in interest-bearing bank deposits and that the income was to be paid to these three sisters during their respective lives and that the trust was to continue until the death of the last surviving sister. The decedent then pro-

vided " that the residuary estate including both the corpus and any accumulated income shall be divided into three (3) equal parts," each part to form a separate and distinct endowment.

It was further provided that " each of these three endowments to be vested separately, in the Church of England Property Trust, Diocese of Sydney, New South Wales, Australia and to be invested by the Archbishop, for the time being, in conjunction with the Standing Committee, for the time being, of the Synod of the Diocese of Sydney, in such a manner and in such investment or investments as shall produce the greatest annual income, compatible with safety."

The decedent directed that the income from these endowments be accumulated by providing as follows: " The nett [sic] income derived from such investment or investments shall be turned back into each separate corpus, from year to year, until the three endowments shall each amount to one hundred thousand pounds (£100,000/./.) when the income from the full amount of each separate endowment shall in the case of the But-Har-Gra Endowment be used for the upkeep of But-Har-Gra and its' activities. That of the Mary and Julia Theological Endowment to assist theological students and or women preparing for social duty or the Mission field, of the Episcopal Faith, who have insufficient means themselves to pay fees and necessary expenses attendant on their studies. And as regards The Sisters' Endowment to assist widows of Episcopal Clergy, who have been left with babies or small children, incapable of earning their living, or with crippled children and without adequate means of support. However, during the interval of the before-mentioned accumulations all the income derived from income may be used as it accrues."

She further clarified her intention by providing as follows: " To elucidate: — Presuming, in the first place, the principal or corpus amounts to ten thousand pounds (£10,000/./.) in each endowment and a yearly rate of four per centum (4%) is obtainable thereon. For the first year that four hundred pounds (£400/./.) must be added to the corpus but in the second year the income received from the four houndred (£400/./.) shall be available for expenses and if the same ratio be maintained in the third year there will be income from eight hundred (£800/./.) and the fourth year from one thousand two hundred pounds (£1200/./.) and so on."

There was an alternate provision for accumulation set out in the will as follows: " Now if it should so happen that under the Australian laws, governing Endowments that it is **not** per-

missible to create accumulating ones, as hereinbefore described, then, let the monies be placed as nuclei or basic initial reserves. Each separate nucleus, (three [3] in all) remaining intact and inviolate, to be built up along the lines as herein formulated until it attains the sum of one hundred thousand pounds (£100,000/./.) and then let this amount become an endowment to accord with my wishes as stated.''

The respondents claim that the trust violates the rule against perpetuities in that the direction for the setting up of the three endowments after the death of the last surviving sister is in effect a condition precedent which may not be fulfilled within the allowed period of time; that specifically the provision for the accumulation of income postpones the vesting of the remainder interest in the Church of England Property Trust and that intestacy results. The respondents also maintain that the accumulation provisions are an essential part of the decedent's charitable scheme and that the trust may not be saved by the cy pres doctrine because the will shows no general charitable intention.

The validity of the trust is governed by the laws of the State of New South Wales, Australia. The decedent has expressed an intention that the trust be administered under the Australian law (cf. *Matter of Ryan,* 178 Misc. 1007, and Decedent Estate Law, § 47). In any event, in view of the fact that the trust is to take effect in New South Wales and is to be administered by trustees resident there for Australian beneficiaries, if the trust is valid under that law, it will be upheld. (*Manice* v. *Manice,* 43 N. Y. 303, 387–388; *Chamberlain* v. *Chamberlain,* 43 N. Y. 424; *Hope* v. *Brewer,* 136 N. Y. 126.)

New South Wales follows the English common-law Rule against Perpetuities which states that no interest is good unless it must vest, if at all, not later than twenty-one years after some life or lives in being at the creation of the trust (The Australian Courts Act 1828, 9 Geo. IV, ch. 83; Gray on The Rule Against Perpetuities [4th ed.], § 201).

The trust for the lives of the decedent's three sisters is therefore valid.

The Church of England Property Trust is a corporation organized by the act of the Parliament of New South Wales for the express purpose of holding title to property bequeathed to the Church of England in that diocese and there is no dispute as to the fact that it is authorized to receive the bequest, if valid, and carry out its purposes (Church of England Trust Property Act, 1917, No. 21 [New South Wales]).

The validity of the remainder to the Church of England Property Trust turns on the interpretation given to the will (*Matter of Finkelstein,* [1926] V. L. R. 241, 249 [Victoria, Australia]).

It first must be determined whether the decedent's intention was that the gift should vest at once, its beneficial effect only being postponed until the accumulation shall have been accomplished or whether the intention was that the gift itself should be contingent upon the accumulation's taking place. If it is not contingent to the vesting, the provision for the accumulation does not render the gift invalid. If it is contingent and the period of accumulation transgresses the rule against remoteness, the gift is void *ab initio.* (5 R. C. L., Charities, §§ 17, 18, pp. 303, 304.)

The rule of law involved here has been stated in *Monds* v. *Stackhouse* (77 C. L. R. 232, 248 [Australia]) as follows:

" The principle by which the question is governed involves what may seem to be a refined distinction, but it is a clear distinction.

" If there is a gift impressed with an immediate trust for a charitable purpose it is good, notwithstanding that the actual application of the fund in carrying the purpose into execution must await an event that may or may not happen within the period prescribed by the rule against perpetuities. But if such an event is made the occasion, not of the application or expenditure of the fund, but of the subjection of the fund to the charitable trust itself, that is another matter." (See, also, 3 Scott On Trusts, § 401.9, pp. 2141–2142.)

It is the conclusion of the court that under the provisions of the decedent's will, it was not her intention to subject the gift to a condition precedent. There is an immediate unconditional gift to the Church of England, at least at the death of the last surviving sister, vesting in the Church, the remainder interest. (*Matter of Swain* [1905], 1 Ch. 669; see Gray on The Rule Against Perpetuities [4th ed.], § 678, note 2, p. 631 discussing *Ewen* v. *Bannerman,* 2 Dow & Cl. 74.)

It is conceded that the decedent was explicit in her directions as to accumulations but such directions are not material to the validity of the trust. Such accumulations are to be made after the gift is made directly to the charitable organization. There is no gift to an intermediary who is to administer the fund, accumulate the income and then pay over to charity. (3 Scott on Trusts, § 401.9.)

In view of the finding that the decedent intended to make an immediate gift which is vested in the Church of England Property Trust, the Rule against Perpetuities does not apply and it is not necessary to decide whether or not the decedent had a general charitable intention or whether the cy pres doctrine is applicable.

As the accumulations do not affect the validity of the vested remainder in the Church of England Property Trust, it would appear unnecessary to determine what effect would be given to this direction to accumulate income until the fund reaches £100,000. (*Manice* v. *Manice,* 43 N. Y. 303, 387–388, *supra.*) If the direction for accumulation is valid, it will be enforced; if invalid, it will be disregarded by the New South Wales Court.

The executor has raised a question as to whether or not the trustees must qualify in the State of New York. Inasmuch as the trust is to be administered in New South Wales, the trustees will not be required to qualify in this State (*Matter of Shipman,* 179 Misc. 303; *Matter of McAuliffe,* 167 Misc. 783).

A further question has been raised with reference to the construction to be given to the following portion of article "Fourthly" dealing with the disposition of income from the estate during the administration by the executor: "And during the time required to administer my estate, by my Executors, the nett [sic] income from such estate shall be paid, by them, to my Trustees, (hereinafter named,) from time to time, as exchanges are made and forwarded by draft to the Union Bank, Sydney, New South Wales, Australia consigned to my Trustees, to be delivered to them and to be placed by them in Trust, for one another, and administered under the laws of Australia govering [sic] Trusts."

The plan of the decedent appears clear — that her executor was merely to marshal all the assets of the estate, convert them into Australian pounds and remit them to the Australian trustees who were to administer the trust. The court does not read into the will any direction for the accumulation of the income earned during the administration of the estate and its addition to corpus.

There is also a question raised by the executor as to whether the decedent has disposed of her entire residuary estate in article "Fourthly" or whether the cash, bank accounts and other personal property forming part of her estate which was not specifically mentioned, pass as intestacy.

In article "Fourthly", the decedent commenced the paragraph "As regards the rest, residue and remainder of my

estate." She then directed her executors to sell stock certificates, rights and stock dividends and instructed them to change the proceeds into sterling (£ s. d. Australian) and forward such proceeds together with cash dividends to her trustees. She also directed that the net income from the estate acquired during its administration by the executor, follow the same course.

The will then provided: "After my Trustees in Australia have given outright one hundred pounds (£100/./.) to my sister, Beatrice Anne Button, the residue shall be placed by them in Trust."

Considering article "Fourthly" as a whole, the specific references to "residue" and "residuary estate" together with the alternate provision in article "Thirdly" wherein she provided that the proceeds from the specific real property, if it were sold or under sale at the time of her death " shall become subject to the same conditions of distribution as my residuary estate, of which these proceeds will form a part as also will any monies standing to my credit in any bank  *  *  * ", the intention of the decedent appears clear. The entire residuary estate has been effectively disposed of in article "Fourthly".

Settle decree.