In the Matter of the Accounting of PHILIP M. BRETT et al., as Trustees under the Will of MARGARET D. BISHOP, Deceased, Respondents.

ELIZABETH T. GARDNER et al., Appellants; WEST FIFE HOSPITALS BOARD OF MANAGEMENT et al., Respondents.

First Department, June 5, 1956.

*Robert H. Mulreany* of counsel (*Turnbull & Bergh,* attorneys), for Elizabeth T. Gardner and another; (*Dewey, Ballantine, Busby, Palmer & Wood,* attorneys), for Memorial Center for Cancer and Allied Diseases; (*Cadwalader, Wickersham & Taft,* attorneys), for St. Mary's Hospital for Children, Inc.; (*De Forest, Elder & Mulreany,* attorneys), for Presbyterian Hospital in the City of New York, appellants.

*Henry N. Ess, III,* of counsel (*Lorene Joergensen* with him on the brief; *Sullivan & Cromwell,* attorneys), for West Fife Hospital's Board of Management, respondent.

*Daniel M. Cohen* of counsel (*James O. Moore, Jr., P. Hodges Combier* and *Flavius N. Costerella* with him on the brief; *Jacob K. Javits, Attorney-General,* appellant, in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law.

BERGAN, J. Whether a Scottish hospital has been so altered in character by the effect of the British policy undertaken in the establishment of the national health service as no longer to qualify for benefits under a New York will is the problem presented by this case.

The testatrix, Margaret Donald Bishop, left one third of her residuary estate under contingencies which have now occurred, " to the Dunfermline & West Fife Hospital, situate in Dunfermline, Fife, Scotland, to have and to hold the same forever ". Another third went to the Ossining Hospital Association at Ossining, New York, and there is no question raised about this bequest. The share which would go to the Scottish hospital would be about $180,000.

The will was executed April 3, 1935, and testatrix died in Dunfermline, Scotland, on August 24, 1938. She was, at her death, a resident of New York. Two thirds of the residuary estate were bequeathed to trustees for the life benefit of her sister Anna Edgar Donald with testamentary power of appointment in the life beneficiary.

The beneficiary survived the testatrix and the trust was established. On December 16, 1942, the beneficiary released the

power of appointment. and upon her death April 15, 1950 her will, admitted to probate in Westchester, specifically excluded any property under the power and stated that it was not her intention to exercise such power of appointment released by her December 16, 1942.

The will of the testatrix here, Margaret Donald Bishop, provided that if Anna Edgar Donald survived the testatrix and died without exercising the power of appointment, the principal of the trust fund which, as it has been seen, was two thirds of the residuary, would be payable one half to the hospital in Scotland and one half to the hospital in Westchester.

At the time the will of the testatrix was executed in 1935; at the time of her death in 1938; at the time of the formal renunciation of the power of appointment by Anna Edgar Donald in 1942, the Dunfermline & West Fife Hospital was not a corporate entity.

It was, rather, a voluntary association maintained by public subscription and it is conceded by formal stipulation in this record that a bequest expressed in a Scottish will to such an unincorporated association would be valid and enforcible according to Scottish law. The municipal law of the place of the charity would control; (*Hope* v. *Brewer*, 136 N. Y. 126) and this seems conceded by appellants.

Under the constitution and rules of the Dunfermline & West Fife Hospital, the title of its property was vested in trustees '' for the purposes of the Hospital as set forth in this Constitution ''. The managers of the hospital and its officers, including trustees, were elected by '' Subscribers '' as defined in the hospital's constitution, which provided, however, that one public officer, the Provost of Dunfermline, be vested with the office of trustee, *ex officio*.

The Surrogate held, and it seems now on appeal to be conceded, that this gift vested on the death of Mrs. Bishop in 1938, in the unincorporated association as it then existed and in its trustees.

But on July 5, 1948 the National Health Service (Scotland) Act, 1947 (10 & 11 Geo. VI, ch. 27, pt. II) became effective which worked changes in public medical facilities generally in Scotland, and which, among other things, altered the management, and control of property of the Dunfermline & West Fife Hospital. It is useful for our purposes to examine the effect of this act upon the hospital.

It provided that upon the appointed date specified there shall '' be transferred to and vest in the Secretary of State for Scotland * * * all interests in or attaching to premises

forming part of a voluntary hospital  *  *  *  and in equipment, furniture or other corporeal moveable property used in or in connection with such premises, being interests held  *  *  *  by the governing body of the hospital or by trustees solely for the purposes of that hospital ''.  (§ 6.)

The act further provided such hospitals are to be administered by regional hospital boards and it provided for a board of management to control and operate one or more hospitals under the control of the regional board.  Governing bodies of voluntary hospitals transferred by the statute to the Secretary of State '' shall  *  *  *  be dissolved.''  (§ 76.)

In pursuance of the act, the West Fife Hospital's Board of Management was set up and the hospital continued to serve the community in the same facilities which it had been using. It is specifically provided that the hospital board of management '' shall have power to accept, hold and administer any property upon trust for purposes relating to hospital  *  *  * services ''.  (§ 58.)   There are directions in the statute requiring the board of management to apply as far as practicable the benefits of such a trust to the area in which the hospital is situated.  The West Fife Hospital's Board of Management offers to submit an undertaking that the fund in this case will be used for the Dunfermline & West Fife Hospital.

Since the remainder under the will had vested in the trustees of the voluntary hospital in 1938, it must be deemed transferred to the West Fife Hospital's Board of Management on July 5, 1948, the effective date of the statute which, as it has been seen, operates to transfer from trustees of voluntary hospitals to the successor boards of management, trust property as well as other kinds of property.

It is argued by appellants that the statute does not expressly provide for such transfer of trust property which has vested but we are in agreement with the Surrogate in holding that the powers and duties of the new boards must be deemed to have included the succession to control and management of property held on trust.  (§§ 58, 59.)   To the extent that the act may be open to other constructions, we are of opinion that the interpretation that has been given in Scotland, holding that a legacy to a Scottish hospital passed to the board of management which had succeeded to the powers of the former governors is entirely reasonable (*M'Clement's Trustees* v. *Campbell,* [1951] S. C. 167).   This is consistent with an interpretation by the English courts of comparable sections of the English act (Re Kellner's Will Trusts, [1949] 2 All E. R. 774).

Appellants argue that the Dunfermline & West Fife Hospital ceased to exist upon nationalization. The former voluntary entity continues, however as a hospital; the same physical facilities and equipment are used; it continues to care for the sick and to serve for the same purposes the same area. The changes are largely in the direction of greater public control of its management.

The accelerating magnitude of increases in cost of hospital services in all countries, and the constantly growing fields in which hospitals are able to provide services to the sick, have made inevitable, and almost universal, changes in the methods of maintenance. Those changes all seem to point in the direction of greater aid from the resources of public authority. The testatrix did not expect the hospital she was benefiting in Scotland would remain static. It would be expected that as new needs arose for the care of the sick, means would be found by the community to meet those needs. The British Parliament adopted the National Health Service Act and it continued in existence, in this instance, the same hospital serving the same general needs of the same community and to serve new needs as they might arise. General statements of purpose in the original constitution of the hospital, such as a policy that hospital service be given " preferentially for those residing in the town and district of Dunfermline " certainly are not so wholly altered as to change the true public and charitable character of this hospital.

The English courts have had no difficulty in saying that such a hospital is still to be regarded as a charity under its reorganization and continuance by virtue of the act (cf. Re Frere, [1950] 2 All E. R. 513).

We will not evoke a difficulty that the courts intimately concerned with the impact of this statutory purpose on charitable hospitals do not find in it. In view of this we agree with the conclusion of the Surrogate that the hospital intended to be benefited still exists and that the devotion of the proceeds of the trust to the function of the hospital as thus continued by the act, is conformable with the intention of the testatrix.

The decree of the Surrogate should be affirmed, with costs.

BREITEL, J. P., BOTEIN and RABIN, JJ., concur.

Decree, so far as appealed from, unanimously affirmed, with costs to all parties appearing and filing briefs herein, payable out of the estate.